# UNITED STATES *v.* MacDONALD

No. 75–1892.   Argued January 9, 1978—Decided May 1, 1978

BLACKMUN, J., delivered the opinion of the Court, in which all other Members joined except BRENNAN, J., who took no part in the consideration or decision of the case.

*Kenneth S. Geller* argued the cause for the United States. With him on the briefs were *Solicitor General McCree, Assistant Attorney General Civiletti,* and *Shirley Baccus-Lobel.*

*Bernard L. Segal* argued the cause for respondent. With him on the brief were *Michael J. Malley* and *Kenneth A. Letzler.*

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

This case presents the issue whether a defendant, *before* trial, may appeal a federal district court's order denying his motion to dismiss an indictment because of an alleged violation of his Sixth Amendment right to a speedy trial.[1]

## I

In February 1970, respondent Jeffrey R. MacDonald was a physician in military service stationed at Fort Bragg in

---

[1] The Sixth Amendment reads in pertinent part:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ."

North Carolina. He held the rank of captain in the Army Medical Corps.

Captain MacDonald's wife and their two daughters were murdered on February 17 at respondent's quarters. Respondent also sustained injury on that occasion. The military police, the Army's Criminal Investigation Division (CID), the Federal Bureau of Investigation, and the Fayetteville, N. C., Police Department all immediately began investigations of the crime. On April 6 the CID informed respondent that he was under suspicion and, that same day, he was relieved of his duties and restricted to quarters. On May 1, pursuant to Art. 30 of the Uniform Code of Military Justice (UCMJ), 10 U. S. C. § 830, the Army charged respondent with the murders. As required by Art. 32 of the UCMJ, 10 U. S. C. § 832, an investigating officer was appointed to investigate the crimes and to recommend whether the charges (three specifications of murder, in violation of Art. 118 of the UCMJ, 10 U. S. C. § 918) should be referred by the general court-martial convening authority (the post commander) to a general court-martial for trial. App. 131.

At the conclusion of the Art. 32 proceeding, the investigating officer filed a report in which he recommended that the charges against respondent be dismissed, and that the civilian authorities investigate a named female suspect. App. 136. On October 23, after review of this report, the commanding general of respondent's unit accepted the recommendation and dismissed the charges. In December 1970, the Army granted respondent an honorable discharge for reasons of hardship.[2]

Following respondent's release from the military, and at the request of the Department of Justice, the CID continued its investigation. This was extensive and wide ranging. In June 1972, the CID submitted to the Department of Justice a 13-volume report recommending still further investigation.

---

[2] Respondent's discharge barred any further military proceeding against him. *United States ex rel. Toth* v. *Quarles,* 350 U. S. 11 (1955).

Supplemental reports were transmitted in November 1972 and August 1973. It was not until August 1974, however, that the Government began the presentation of the case to a grand jury of the United States District Court for the Eastern District of North Carolina.[3] On January 24, 1975, the grand jury indicted respondent on three counts of first-degree murder, in violation of 18 U. S. C. § 1111. App. 22–23. He was promptly arrested and then released on bail a week later.

On July 29, the District Court denied a number of pretrial motions submitted by respondent. Among these were a motion to dismiss the indictment on double jeopardy grounds and another to dismiss because of the denial of his Sixth Amendment right to a speedy trial. App. to Pet. for Cert. 44a, 46a, 49a. Relying on *United States* v. *Marion,* 404 U. S. 307 (1971), the District Court concluded: "The right to a speedy trial under the Sixth Amendment does not arise until a person has been 'accused' of a crime, and in this case this did not occur until the indictment had been returned." App. to Pet. for Cert. 49a. Trial was scheduled to begin in August.

The United States Court of Appeals for the Fourth Circuit stayed the trial and allowed an interlocutory appeal on the authority of its decision in *United States* v. *Lansdown,* 460 F. 2d 164 (1972). App. to Pet. for Cert. 42a. The Court of Appeals, by a divided vote, reversed the District Court's denial of respondent's motion to dismiss on speedy trial grounds and remanded the case with instructions to dismiss the indictment. 531 F. 2d 196 (1976). The Government's petition for rehearing, with suggestion for rehearing en banc, was denied by an evenly divided vote. App. to Pet. for Cert. 2a.

The Court of Appeals panel majority recognized that the denial of a pretrial motion in a criminal case generally is not appealable. The court, however, offered two grounds for its assumption of jurisdiction in this particular case. It stated,

---

[3] There was federal-court jurisdiction because the crimes were committed on a military reservation. 18 U. S. C. §§ 7 (3), 1111, and 3231.

first, that it considered respondent's speedy trial claim to be pendent to his double jeopardy claim, the denial of which *Lansdown* had held to be appealable before trial. Alternatively, although conceding that "[n]ot every speedy trial claim . . . merits an interlocutory appeal," and that "[g]enerally, this defense should be reviewed after final judgment," the court stated that it was "the extraordinary nature of MacDonald's case that persuaded us to allow an interlocutory appeal." 531 F. 2d, at 199.

On the merits, the majority concluded that respondent had been deprived of his Sixth Amendment right to a speedy trial. The dissenting judge without addressing the jurisdictional issue, concluded that respondent's right to a speedy trial had not been violated. *Id.*, at 209.

Because of the importance of the jurisdictional question to the criminal law, we granted certiorari. 432 U. S. 905 (1977).

## II

This Court frequently has considered the appealability of pretrial orders in criminal cases. See, *e. g., Abney* v. *United States,* 431 U. S. 651 (1977); *DiBella* v. *United States,* 369 U. S. 121 (1962); *Parr* v. *United States,* 351 U. S. 513 (1956); *Cobbledick* v. *United States,* 309 U. S. 323 (1940). Just last Term the Court reiterated that interlocutory or "piecemeal" appeals are disfavored. "Finality of judgment has been required as a predicate for federal appellate jurisdiction." *Abney* v. *United States,* 431 U. S., at 656. See also *DiBella* v. *United States,* 369 U. S., at 124.

This traditional and basic principle is currently embodied in 28 U. S. C. § 1291, which grants the federal courts of appeals jurisdiction to review "all final decisions of the district courts," both civil and criminal.[4] The rule of finality has particular

---

[4] Title 28 U. S. C. § 1291 reads:

"The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States

force in criminal prosecutions because "encouragement of delay is fatal to the vindication of the criminal law." *Cobbledick* v. *United States,* 309 U. S., at 325. See also *DiBella* v. *United States,* 369 U. S., at 126.

This Court in criminal cases has twice departed from the general prohibition against piecemeal appellate review. *Abney* v. *United States, supra; Stack* v. *Boyle,* 342 U. S. 1 (1951). In each instance, the Court relied on the final-judgment rule's "collateral order" exception articulated in *Cohen* v. *Beneficial Industrial Loan Corp.,* 337 U. S. 541, 545–547 (1949).

*Cohen* was a stockholder's derivative action in which federal jurisdiction was based on diversity of citizenship. Before final judgment was entered, the question arose whether a newly enacted state statute requiring a derivative-suit plaintiff to post security applied in federal court. The District Court held that it did not, and the defendants immediately appealed. The Court of Appeals reversed and ordered the posting of security. This Court concluded that the Court of Appeals had properly assumed jurisdiction to review the trial judge's ruling, and affirmed.

The Court's opinion began by emphasizing the principle— well established even then—that there can be no appeal before final judgment "even from fully consummated decisions, where they are but steps towards final judgment in which they will merge. The purpose is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results." *Id.,* at 546. The Court's conclusion that the order appealed from qualified as a "final decision," within the language of 28 U. S. C. § 1291,

District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court."

however, rested on several grounds. Those grounds were summarized in *Abney* v. *United States,* 431 U. S., at 658:

> "First, the District Court's order had fully disposed of the question of the state security statute's applicability in federal court; in no sense, did it leave the matter 'open, unfinished or inconclusive' [337 U. S., at 546]. Second, the decision was not simply a 'step toward final disposition of the merits of the case [which would] be merged in final judgment'; rather, it resolved an issue completely collateral to the cause of action asserted. *Ibid.* Finally, the decision had involved an important right which would be 'lost, probably irreparably,' if review had to await final judgment; hence, to be effective, appellate review in that special, limited setting had to be immediate. *Ibid.*"

Two years after the decision in *Cohen,* the Court applied the "collateral order" doctrine in a criminal proceeding, holding that an order denying a motion to reduce bail could be reviewed before trial. *Stack* v. *Boyle, supra.* Writing separately in that case, Mr. Justice Jackson (the author of *Cohen*) explained that, like the question of posting security in *Cohen,* "an order fixing bail can be reviewed without halting the main trial—its issues are entirely independent of the issues to be tried—and unless it can be reviewed before sentence, it never can be reviewed at all." 342 U. S., at 12.

In *Abney,* the Court returned to this theme, holding that the collateral-order doctrine permits interlocutory appeal of an order denying a pretrial motion to dismiss an indictment on double jeopardy grounds. In so holding, the Court emphasized the special features of a motion to dismiss based on double jeopardy. It pointed out, first, that such an order constitutes "a complete, formal and, in the trial court, a final rejection of a criminal defendant's double jeopardy claim. There are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is

barred by the Fifth Amendment's guarantee. Hence, *Cohen's* threshold requirement of a fully consummated decision is satisfied." 431 U. S., at 659. Secondly, it noted that "the very nature of a double jeopardy claim is such that it is collateral to, and separable from, the principal issue at the accused's impending criminal trial, *i. e.,* whether or not the accused is guilty of the offense charged." *Ibid.* Finally, and perhaps most importantly, "the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence." *Id.,* at 660.

## III

The application to the instant case of the principles enunciated in the above precedents is straightforward.[5] Like the

---

[5] Respondent would rely on *United States* v. *Marion,* 404 U. S. 307 (1971), to demonstrate that a defendant has a right to appeal before trial the denial of a motion to dismiss an indictment on speedy trial grounds. That case, however, is clearly distinguishable. In *Marion,* the District Court *granted* the defendants' motion to dismiss the indictment on speedy trial grounds, and the Government appealed the dismissal to this Court. The appeal was predicated on the Criminal Appeals Act, 18 U. S. C. § 3731 (1964 ed., Supp. V), which, at the time, provided in relevant part:

"An appeal may be taken by and on behalf of the United States from the district courts direct to the Supreme Court of the United States in all criminal cases in the following instances:

.          .          .          .          .

"From the decision or judgment sustaining a motion in bar, when the defendant has not been put in jeopardy."

Currently, 18 U. S. C. § 3731 (1976 ed.) provides:

"In a criminal case, an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution."

Obviously, neither the former version of the statute nor the current one has anything whatsoever to do with a defendant's right to appeal the denial of a motion to dismiss an indictment on speedy trial grounds.

denial of a motion to dismiss an indictment on double jeopardy grounds, a pretrial order rejecting a defendant's speedy trial claim plainly "lacks the finality traditionally considered indispensable to appellate review," *Abney* v. *United States,* 431 U. S., at 659, that is, such an order obviously is not final in the sense of terminating the criminal proceedings in the trial court. Thus, if such an order may be appealed before trial, it is because it satisfies the criteria identified in *Cohen* and *Abney* as sufficient to warrant suspension of the established rules against piecemeal review before final judgment.

We believe it clear that an order denying a motion to dismiss an indictment on speedy trial grounds does not satisfy those criteria. The considerations that militated in favor of appealability in *Stack* v. *Boyle, supra,* and in *Abney* v. *United States* are absent or markedly attenuated in the present case. In keeping with what appear to be the only two other federal cases in which a defendant has sought pretrial review of an order denying his motion to dismiss an indictment on speedy trial grounds, we hold that the Court of Appeals lacked jurisdiction to entertain respondent's speedy trial appeal. *United States* v. *Bailey,* 512 F. 2d 833 (CA5), cert. dism'd, 423 U. S. 1039 (1975); *Kyle* v. *United States,* 211 F. 2d 912 (CA9 1954).[6]

---

[6] The justifications proffered by the Court of Appeals for its exercise of jurisdiction (see *supra,* at 852–853) are not persuasive for us. The argument that respondent's Sixth Amendment claim was "pendent" to his double jeopardy claim is vitiated by *Abney* v. *United States,* 431 U. S. 651, 662–663 (1977) (decided after the Court of Appeals filed its opinion), where this Court concluded that a federal court of appeals is without pendent jurisdiction over otherwise nonappealable claims even though they are joined with a double jeopardy claim over which the appellate court does have interlocutory appellate jurisdiction. See also *United States* v. *Cerilli,* 558 F. 2d 697, 699–700 (CA3), cert. denied, 434 U. S. 966 (1977).

The Court of Appeals' alternative rationale—that it was the "extraordinary nature" of respondent's claim that merited interlocutory appeal,

In sharp distinction to a denial of a motion to dismiss on double jeopardy grounds, a denial of a motion to dismiss on speedy trial grounds does not represent "a complete, formal and, in the trial court, a final rejection" of the defendant's claim. *Abney* v. *United States,* 431 U. S., at 659. The resolution of a speedy trial claim necessitates a careful assessment of the particular facts of the case. As is reflected in the decisions of this Court, most speedy trial claims, therefore, are best considered only after the relevant facts have been developed at trial.

In *Barker* v. *Wingo,* 407 U. S. 514 (1972), the Court listed four factors that are to be weighed in determining whether an accused has been deprived of his Sixth Amendment right to a speedy trial. They are the length of the delay, the reason for the delay, whether the defendant has asserted his right, and prejudice to the defendant from the delay. *Id.,* at 530. The Court noted that prejudice to the defendant must be considered in the light of the interests the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.,* at 532 (footnote omitted).

Before trial, of course, an estimate of the degree to which delay has impaired an adequate defense tends to be speculative. The denial of a pretrial motion to dismiss an indict-

even though not all speedy trial claims would be so meritorious—is also unpersuasive. "Appeal rights cannot depend on the facts of a particular case." *Carroll* v. *United States,* 354 U. S. 394, 405 (1957). The factual circumstances that underlie a speedy trial claim, however "extraordinary," cannot establish its independent appealability prior to trial. Under the controlling jurisdictional statute, 28 U. S. C. § 1291, the federal courts of appeals have power to review only "final decisions," a concept that Congress defined "in terms of categories." *Carroll* v. *United States,* 354 U. S., at 405.

ment on speedy trial grounds does not indicate that a like motion made after trial—when prejudice can be better gauged—would also be denied. Hence, pretrial denial of a speedy trial claim can never be considered a complete, formal, and final rejection by the trial court of the defendant's contention; rather, the question at stake in the motion to dismiss necessarily "remains open, unfinished [and] inconclusive" until the trial court has pronounced judgment. *Cohen,* 337 U. S., at 546.

Closely related to the "threshold requirement of a fully consummated decision," *Abney* v. *United States,* 431 U. S., at 659, is the requirement that the order sought to be appealed be "collateral to, and separable from, the principal issue at the accused's impending criminal trial, *i. e.,* whether or not the accused is guilty of the offense charged." *Ibid.* In each of the two cases where this Court has upheld a pretrial appeal by a criminal defendant, the order sought to be reviewed clearly fit this description. *Abney* v. *United States* (double jeopardy); *Stack* v. *Boyle* (bail reduction). As already noted, however, there exists no such divorce between the question of prejudice to the conduct of the defense (which so often is central to an assessment of a speedy trial claim) and the events at trial. Quite the contrary, in the usual case, they are intertwined.

Even if the degree of prejudice could be accurately measured before trial, a speedy trial claim nonetheless would not be sufficiently independent of the outcome of the trial to warrant pretrial appellate review. The claim would be largely satisfied by an acquittal resulting from the prosecution's failure to carry its burden of proof. The double jeopardy motion in *Abney* was separable from the issues at trial because "[t]he elements of that claim are completely independent of [the accused's] guilt or innocence," 431 U. S., at 660, since an acquittal would not have eliminated the defendant's grievance at having been put twice in jeopardy. In contrast, a central

interest served by the Speedy Trial Clause is the protection of the factfinding process at trial. The essence of a defendant's Sixth Amendment claim in the usual case is that the passage of time has frustrated his ability to establish his innocence of the crime charged. Normally, it is only after trial that that claim may fairly be assessed.

Relatedly, the order sought to be appealed in this case may not accurately be described, in the sense that the description has been employed, as involving "an important right which would be 'lost, probably irreparably,' if review had to await final judgment." *Id.*, at 658, quoting *Cohen,* 337 U. S., at 546. The double jeopardy claim in *Abney,* the demand for reduced bail in *Stack* v. *Boyle,* and the posting of security at issue in *Cohen* each involved an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.[7] There perhaps is some superficial attraction in the argument that the right to a speedy trial—by analogy to these other rights—must be vindicated before

---

[7] Admittedly, there is value—to all but the most unusual litigant—in triumphing before trial, rather than after it, regardless of the substance of the winning claim. But this truism is not to be confused with the quite distinct proposition that certain claims (because of the substance of the rights entailed, rather than the advantage to a litigant in winning his claim sooner) should be resolved before trial. Double jeopardy claims are paradigmatic.

Certainly, the fact that this Court has held dismissal of the indictment to be the proper remedy when the Sixth Amendment right to a speedy trial has been violated, see *Strunk* v. *United States,* 412 U. S. 434 (1973), does not mean that a defendant enjoys a "right not to be tried" which must be safeguarded by interlocutory appellate review. Dismissal of the indictment is the proper sanction when a defendant has been granted immunity from prosecution, when his indictment is defective, or, usually, when the only evidence against him was seized in violation of the Fourth Amendment. Obviously, however, this has not led the Court to conclude that such defendants can pursue interlocutory appeals. *Abney* v. *United States,* 431 U. S., at 663; *Cogen* v. *United States,* 278 U. S. 221, 227 (1929); *Heike* v. *United States,* 217 U. S. 423, 430 (1910).

trial in order to insure that no nonspeedy trial is ever held. Both doctrinally and pragmatically, however, this argument fails. Unlike the protection afforded by the Double Jeopardy Clause, the Speedy Trial Clause does not, either on its face or according to the decisions of this Court, encompass a "right not to be tried" which must be upheld prior to trial if it is to be enjoyed at all. It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial. If the factors outlined in *Barker* v. *Wingo*, *supra*, combine to deprive an accused of his right to a speedy trial, that loss, by definition, occurs before trial. Proceeding with the trial does not cause or compound the deprivation already suffered.

Furthermore, in most cases, as noted above, it is difficult to make the careful examination of the constituent elements of the speedy trial claim before trial.[8] Appellate courts would be in no better position than trial courts to vindicate a right that had not yet been shown to have been infringed.

## IV

As the preceding discussion demonstrates, application of the principles articulated in *Cohen* and *Abney* to speedy trial claims compels the conclusion that such claims are not appealable before trial. This in itself is dispositive. Our conclusion, however, is reinforced by the important policy considerations that underlie both the Speedy Trial Clause and 28 U. S. C. § 1291.

Significantly, this Court has emphasized that one of the principal reasons for its strict adherence to the doctrine of finality in criminal cases is that "[t]he Sixth Amendment guarantees a speedy trial." *DiBella* v. *United States,* 369 U. S., at 126. Fulfillment of this guarantee would be impossible if every pretrial order were appealable.

---

[8] Of course, an accused who does successfully establish a speedy trial claim before trial will not be tried.

Many defendants, of course, would be willing to tolerate the delay in a trial that is attendant upon a pretrial appeal in the hope of winning that appeal. The right to a speedy trial, however, "is generically different from any of the other rights enshrined in the Constitution for the protection of the accused" because "there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *Barker* v. *Wingo,* 407 U. S., at 519. See also *United States* v. *Avalos,* 541 F. 2d 1100, 1110 (CA5 1976), cert. denied, 430 U. S. 970 (1977). Among other things, delay may prejudice the prosecution's ability to prove its case, increase the cost to society of maintaining those defendants subject to pretrial detention, and prolong the period during which defendants released on bail may commit other crimes. *Dickey* v. *Florida,* 398 U. S. 30, 42 (1970) (BRENNAN, J., concurring).

Allowing an exception to the rule against pretrial appeals in criminal cases for speedy trial claims would threaten precisely the values manifested in the Speedy Trial Clause. And some assertions of delay-caused prejudice would become self-fulfilling prophecies during the period necessary for appeal.

There is one final argument for disallowing pretrial appeals on speedy trial grounds. As the Court previously has observed, there is nothing about the circumstances that will support a speedy trial claim which inherently limits the availability of the claim. See *Barker* v. *Wingo,* 407 U. S., at 521–522, 530. Unlike a double jeopardy claim, which requires at least a colorable showing that the defendant once before has been in jeopardy of federal conviction on the same or a related offense, in every case there will be some period between arrest or indictment and trial during which time "every defendant will either be incarcerated . . . or on bail subject to substantial restrictions on his liberty." *Id.,* at 537 (WHITE, J., concurring). Thus, any defendant can make a pretrial motion

for dismissal on speedy trial grounds and, if § 1291 is not honored, could immediately appeal its denial.

## V

In sum, we decline to exacerbate pretrial delay by intruding upon accepted principles of finality to allow a defendant whose speedy trial motion has been denied before trial to obtain interlocutory appellate review.[9]  The judgment of the Court of Appeals is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE BRENNAN took no part in the consideration or decision of this case.

---

[9] In view of our resolution of the appealability issue, we do not reach the merits of respondent's motion to dismiss the indictment on speedy trial grounds. Similarly, we express no opinion on the District Court's denial of respondent's motion to have the indictment dismissed on double jeopardy grounds. The Court of Appeals stated that it had jurisdiction to review the latter claim, 531 F. 2d 196, 199 (1976), but declined to address its merits because of the court's disposition of respondent's speedy trial motion. *Id.*, at 209.