**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Douglas GRIFFIN,**
**Defendant-Appellant.**

No. 79–1513.

United States Court of Appeals,
Ninth Circuit.

March 6, 1980.

Rehearing Denied May 22, 1980.

David M. Heller, Phoenix, Ariz., for defendant-appellant.

D. Danneman, Asst. U. S. Atty., Phoenix, Ariz., for the U. S.

Before TRASK and KENNEDY, Circuit Judges, and KELLEHER *, District Judge.

KELLEHER, District Judge:

Griffin appeals the District Court's order denying his motion to dismiss the indictment on the grounds of vindictive prosecution. We must determine if such an order may be appealed, *before trial*, as a final decision within the meaning of 28 U.S.C. § 1291. If it is subject to an interlocutory appeal, we must then decide whether the trial court erred in refusing to dismiss the indictment.

In September, 1976, the Labor-Management Services Administration learned of evidence that the defendant may have embezzled funds during his tenure as the Financial Secretary for the Roofer's Union Local 135, and the Coordinator for the Phoenix Roofing Industry Joint Apprenticeship Committee [hereinafter referred to as "JAC"]. Thereafter, an intensive investigation by officers of the Department of Labor culminated in an indictment on March 22, 1979, charging Griffin with 35 counts of embezzlement in violation of 18 U.S.C. § 664 and 29 U.S.C. § 501(c). *United States v. James Douglas Griffin*, CR 79–77–PHX–WPC (D.Ariz.) [hereinafter referred to as "Griffin I"].

During the period of the initial investigation in *Griffin I*, investigators of the Department of Labor discovered evidence that Griffin may also have defrauded the Veterans Administration by falsely certifying that one Casey was receiving full-time JAC training. Finding itself without jurisdiction over the matter, the Department of Labor reported these findings to the United States Attorney in November of 1978. At the request of the United States Attorney, the FBI conducted an investigation into the alleged Veterans Administration fraud, and summarized its findings in a report sent to the prosecutor on April 11, 1979.

On April 27, 1979, the defendant learned that handwritten notes of government agents taken during interviews with witnesses in *Griffin I* had been destroyed. These notes had been requested as possible Jencks Act material, pursuant to *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976), and Rule 16 of the Federal Rules of Criminal Procedure. On May 4, 1979, the defendant filed four motions in *Griffin I* relating to the destruction of the government notes, including a motion to dismiss the indictment.

On May 9, 1979, five days after Griffin filed his motions in *Griffin I*, the indictment in this case was returned, which charged the defendant with twelve counts of mail fraud in violation of 18 U.S.C. § 1341, and one count of false statements in violation of 18 U.S.C. § 1001. *United States v. James Douglas Griffin*, CR 79–128–PHX–WPC (D.Ariz.) [hereinafter referred to as "Griffin II"]. The indictment stemmed from the investigation into Griffin's alleged fraud on the Veterans Administration.

On May 15, 1979, the trial judge entered an order dismissing the indictment in *Griffin I* because of the failure of the government to preserve handwritten notes. Thereafter, the defendant filed a motion to dismiss the indictment in *Griffin II* on the grounds of vindictive prosecution. The motion was denied by the district judge and is before us on this appeal.

* Honorable Robert J. Kelleher, United States District Judge, Central District of California, sitting by designation.

**1344**

*Interlocutory Appeal under 28 U.S.C. § 1291*

The threshold inquiry in this case is whether the District Court's denial of the defendant's motion to dismiss the indictment on the grounds of vindictive prosecution is immediately appealable under 28 U.S.C. § 1291. That statute grants the Courts of Appeal jurisdiction to review all "final decisions of the district courts," both civil and criminal.[1]

The consistent and long-standing policy of the federal judiciary has been to avoid the practice of interlocutory or piecemeal appellate review. *See, e. g., United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978); *Di Bella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). This policy has particular force in criminal cases, in which the absence of delay is often essential to the proper functioning of the justice system. Thus, the Supreme Court has frequently reiterated the traditional requirement of a final judgment as a predicate to federal appellate jurisdiction. *See, Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977); *Di Bella v. United States*, 369 U.S. at 126, 82 S.Ct. at 658 (1962). The statutory basis for federal appellate jurisdiction, 28 U.S.C. § 1291, clearly encompasses the rule of finality in both language and purpose. In certain cases, however, the "final decision" requirement of that statute has been held not to require a final judgment which actually terminates the entire proceeding. The basis for this departure from the traditional rule has been the so-called "collateral-order" exception first articulated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

*Cohen* was a stockholders derivative suit in which the question arose whether a newly-enacted state statute which required the posting of security applied in federal court. The order of the district court that the posting of security was not required was held to be immediately appealable as a final decision within the meaning of 28 U.S.C. § 1291.

The Court established essentially three requirements for application of the "collateral-order" exception. First, there had to be a complete and final determination of the issue in the district court. No appeal may be taken if the matter was left "open, unfinished or inconclusive." 337 U.S. at 546, 69 S.Ct. at 1225. Second, the decision could not be simply a "step toward final disposition of the merits of the case [that would] be merged in final judgment"; rather, it must resolve an issue wholly collateral to the actual cause of action asserted. *Ibid.* Finally, the rights involved in the decision would be "lost, probably irreparably," if appellate review was postponed until final judgment. *Ibid.*

The "collateral-order" exception to the final judgment rule was subsequently held to be applicable to the denial of a motion to dismiss an indictment on the grounds of double jeopardy. *See, Abney v. United States, supra*. In *Abney*, the Court recognized that a pretrial order denying a motion to dismiss an indictment was not final in the sense that it terminated the criminal proceedings against the accused. It concluded, nevertheless, that the special considerations raised by a double jeopardy claim brought such a decision "within the 'small class of cases' that *Cohen* has placed beyond the confines of the final-judgment rule." 431 U.S. at 659, 97 S.Ct. at 2040.

The Court's analysis involved a straightforward application of the *Cohen* requirements for the "collateral-order" exception. First, the Court concluded that the order denying the motion to dismiss was a com-

---

1. Section 1291 provides as follows:

 "The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court."

plete, formal, and final rejection of the double jeopardy claim in the trial court, thereby satisfying *Cohen's* threshold requirement. *Id.* Second, the nature of the double jeopardy claim made it "collateral to, and separable from the principal issue at the accused's impending trial, *i. e.* whether or not the accused is guilty of the offense charged." *Ibid.* The elements of the claim were completely independent of the merits of the charges against him. Finally, the Court concluded that the rights conferred on the accused by the double jeopardy clause would be significantly impaired if appellate review of the claim was postponed until after trial and conviction. *Id.* at 660, 97 S.Ct. at 2041.

The *Abney* court's determination that the defendant's rights would be seriously impaired unless an immediate appeal was granted is particularly instructive in the matter before the Court. In finding that the double jeopardy clause was a guarantee against twice being forced to stand trial for the same offense, the Court emphasized that an integral part of the guarantee is the assurance that an individual will not be forced "to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense." *Id.* at 661, 97 S.Ct. at 2041. These interests were deemed to be separate from, and independent of the appropriateness of any subsequent conviction. The Court concluded that those interests would be lost if the defendant was forced to defend himself at trial, regardless of the outcome. *Id.*

■ We believe that the same considerations that led the court to grant an appeal before trial in *Abney* are present in an order denying a motion to dismiss on vindictive prosecution grounds. Accordingly, we hold that we have jurisdiction to entertain an immediate appeal of that decision under 28 U.S.C. § 1291.

Our conclusion necessarily follows once the criteria identified in *Cohen* and *Abney* are applied to the instant motion. First,

the denial of the motion is a complete and final determination of the accused's vindictive prosecution claim in the trial court. The defendant has simply exhausted all means by which he could avoid standing trial on the charges against him. In this regard, the considerations which militated against the granting of an interlocutory appeal of a speedy trial claim in *United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) are markedly absent here. In *MacDonald*, the Court reasoned that resolution of a speedy trial claim "necessitates a careful assessment of the particular facts of the case" to determine the extent to which the delay may have prejudiced the accused. 435 U.S. at 858, 98 S.Ct. at 1551. The Court concluded that the claim was best considered after the relevant facts had been developed at trial. *Id.* In contrast, all the facts relevant to the vindictive prosecution claim will be apparent and known to the parties prior to trial. No further purpose can be served by postponing a determination of the issue.

Second, a vindictive prosecution claim is wholly collateral to the issue of the guilt or innocence of the accused on the underlying substantive charges. The defendant is contending either that the mere bringing of the second indictment was in retaliation for the exercise of his legal rights, or that it gives such an appearance of vindictiveness that it will chill the exercise of legal rights by subsequent defendants. *See, United States v. DeMarco*, 550 F.2d 1224, 1227 (9th Cir. 1977). In no sense does such a claim constitute a challenge to the merits of the charges brought against the accused, nor could a disposition of the claim "affect, or . . . be affected by," a decision which is based on the merits. *Cohen*, 337 U.S. at 546, 69 S.Ct. at 1225.

Finally, a vindictive prosecution claim, like the *Abney* double jeopardy claim, involves a right to be free from prosecution itself, rather than merely the right to be free from a subsequent conviction. Thus, the vindictive prosecution doctrine is a limit

on prosecutorial discretion, and goes to the very authority of the prosecution to hale the defendant into court in the first place. See, *Abney*, 431 U.S. at 660–62, 97 S.Ct. at 2040; *Blackledge v. Perry*, 417 U.S. 21, 30, 94 S.Ct. 2098, 2103, 40 L.Ed.2d 628 (1974). Obviously, this right would be irreparably lost if appellate review had to await the final outcome at trial. As recognized in *Abney*, an integral part of the process of defending oneself in a criminal prosecution is the "personal strain, public embarrassment, and expense" which inevitably results. *Abney*, 431 U.S. at 661, 97 S.Ct. at 2041. Not only are these interests sacrificed if appellate review is postponed, but the additional psychological and financial burdens of preparing for a new trial will very likely supply the deterrent against which the vindictive prosecution doctrine is aimed. Even if a defendant is convinced that he will ultimately be vindicated on appeal, the reality of a trial may deter all but the most hardy defendant from exercising certain legal rights.

In holding that the order of the district court is immediately appealable under 28 U.S.C. § 1291, we do not agree with appellee's contention that such a decision will open the floodgates of interlocutory appeals of due process claims. Freedom from vindictive prosecution is a meaningful right only if it protects against being brought into court to defend against the charges. In addition, only those cases which meet the narrowly-drawn *Cohen* criteria will be subject to interlocutory appeal.

We turn finally to the merits of the appellant's claim that the trial court erred in not granting his motion to dismiss the indictment.

*The Vindictive Prosecution Claim*

In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court held that due process prohibited a trial judge from imposing a more severe sentence at a subsequent trial in retaliation for the defendant's successful exercise of his statutory right to challenge

his original conviction. In recognizing that "a defendant [must] be freed of apprehension of such retaliatory motivation" in asserting his rights, the Court held that the rationale for such a sentence increase must relate to actions of the defendant occurring subsequent to the original sentencing and which appear in the record. 395 U.S. at 725–26, 89 S.Ct. at 2080–81.

In *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Supreme Court extended the rule in *Pearce* to situations involving the apprehension of vindictiveness by prosecutors. In *Blackledge* defendant invoked his statutory right to a trial *de novo* in Superior Court following his conviction on a misdemeanor charge, and was subsequently reindicted for a felony on the same acts underlying the earlier charge. The Court noted that the circumstances presented a "realistic likelihood of vindictiveness," and therefore due process required a rule similar to *Pearce*. The Court reasoned that the presumption of vindictiveness may be inferred even in the absence of evidence that the prosecution in fact acted with a malicious or retaliatory motive in seeking the felony indictment. 417 U.S. at 27–28, 94 S.Ct. at 2102–3. Since the prosecution failed to demonstrate that the more serious charge was justified for independent reasons or intervening circumstances, the presumption of vindictiveness prevailed and the indictment was dismissed. 417 U.S. at 29 n.7, 94 S.Ct. at 2103.

Subsequently, this Court summarized *Pearce* and *Blackledge* as placing a "heavy burden" on the prosecution to justify the increase in severity of the alleged charges whenever it has the opportunity to reindict the accused because the accused has exercised a procedural right. *United States v. Ruesga-Martinez*, 534 F.2d 1367, 1369 (9th Cir. 1976). In *Ruesga-Martinez*, the Court reaffirmed the traditional view that the prosecutor has great discretion in choosing which charges to bring against a particular defendant. 534 F.2d at 1369. It insisted, however, that when there is "a significant

possibility that such discretion may have been exercised with a vindictive motive or purpose," the reasons for the prosecutor's decision to increase the stakes for the accused "must be made to appear." *Id.*

 It is now well established that the mere appearance of vindictiveness may give rise to a presumption of a vindictive motive sufficient to establish a due process violation. *See, United States v. Groves,* 571 F.2d 450 (9th Cir. 1978). The inquiry does not end, however, merely upon the demonstration of facts sufficient to give rise to the presumption. Instead, the burden is shifted to the prosecutor to show that his decisions were justified by independent reasons or intervening circumstances which dispel the appearance of vindictiveness. *See, United States v. Ruesga-Martinez,* 534 F.2d 1367, 1369–70 (9th Cir. 1976); *see also, Blackledge v. Perry,* 417 U.S. at 29 n.7, 94 S.Ct. at 2103. Thus, whether the facts give rise to the appearance of vindictiveness is dependent upon the totality of the circumstances surrounding the prosecutorial decision at issue.

With this background we now turn to the precise facts involved in the instant case. The appellant contends that the sequence of events leading to the second indictment in *Griffin II* gives rise to the appearance of vindictiveness sufficient to warrant dismissal. The argument is that the government became aware of the facts underlying the indictment in *Griffin II* well before March 22, 1979, when the indictment in *Griffin I* was returned. The indictment in *Griffin II,* however, was not filed until May 9, 1979, after the defendant had filed his motion to dismiss the earlier indictment and the government was presumably made aware of the possibility that its case in *Griffin I* was in jeopardy.

 Given all the circumstances, the trial judge did not abuse his discretion in finding that there was not an appearance of vindictiveness on these facts. The chronology of events is, of course, entitled to great weight, but it is not dispositive of the inquiry. Here, the evidence is that the indictment was returned within twenty working days of the completion of the FBI investigation of the allegations in *Griffin II.* Furthermore, testimony indicated that upon receipt of the FBI report, the prosecutor considered that some further investigation was necessary. We cannot say as a matter of law that the delay in filing the indictment was unreasonable. To rule otherwise would create a situation in which defendants could impose possibly unreasonable restraints as to both the speed and thoroughness with which the government pursues investigations and brings indictments merely by the timing of their various motions. Such control over prosecutorial discretion is not required by the rule of *Blackledge* and *Pearce,* nor could such a result be desirable.

Other circumstances serve to dispel the appearance of vindictiveness. The investigations in *Griffin I* and *Griffin II* were conducted by two unrelated agencies of government. Though evidence of the conduct which led to the second indictment was discovered during the Department of Labor's initial investigation into the embezzlement allegations, the Labor Department recognized that the matter was properly within the jurisdiction of the Justice Department. Accordingly, the evidence was transmitted to the United States Attorney, who requested the FBI to investigate the allegations to determine if an indictable offense had been committed. This investigation was completed one month after the indictment in *Griffin I* had been filed. There is no evidence that it was not diligently pursued or was otherwise conducted with the purpose to delay the bringing of the subsequent indictment.

It should also be noted that the investigation was into conduct wholly unrelated to that which formed the basis of the earlier indictment. Though the fact that the subsequent indictment was for a different crime is not controlling on the issue of the appearance of vindictiveness, *see, e. g.,*

*United States v. Groves*, 571 F.2d 450, 454 (9th Cir. 1978), it may properly be considered in the context of the whole case. Obviously, an investigation into conduct different from that which has already been made the subject of an indictment should not be limited by the time schedule established for the earlier prosecution.

Finally, in dismissing the indictment in *Griffin I*, the trial judge relied on a novel interpretation of the common law. It is unlikely that in filing the second indictment prior to the trial judge's order, the government was anticipating that the assertion by the plaintiff of his right to the rough notes would be dispositive of the case.

Though none of these factors alone is determinative, each contribute to an overall picture in which the appearance of vindictiveness is insufficient to warrant dismissal. Consideration of the vindictive prosecution claim necessitates, in some cases, an *ad hoc* determination of whether the defendant has reason to perceive a vindictive motive. No such reason presents itself in this case. In so stating, we do not minimize the importance to the inquiry of the deterrent effect the government action may have on future defendants in asserting their rights. *See, United States v. DeMarco*, 550 F.2d at 1227 (9th Cir. 1977). Our concern for the deterrence factor cannot, however, be used in all cases as a shield against the legitimate requirements of the justice system with respect to a particular defendant. Prosecutors require a certain amount of discretion in bringing indictments, including the extent to which an indictment covers all the acts of the defendant which constitute crimes. Nothing in *Blackledge* presumed to give a defendant a free ride for separate crimes he may have committed, or to prevent a prosecutor from bringing new charges as a result of changed or altered circumstances which properly bear on prosecutorial discretion. *See, Blackledge v. Perry*, 417 U.S. at 29 n.7, 94 S.Ct. at 2103.

This is not a case where the only intervening circumstance between the first and second indictment was the assertion by the defendant of his legal rights. The ongoing investigation by the FBI into the new allegations sufficiently explain the delayed filing of the indictment, and there is no evidence that the defendant had any reason to believe that such indictment would not be forthcoming. This may be contrasted with the situation presented in *United States v. Groves*, 571 F.2d 450 (9th Cir. 1978).

In *Groves* the defendant was charged with possession of cocaine in January, 1976, and at that time confessed to involvement in a marijuana smuggling operation. The defendant was told that in return for his cooperation, no charges would be brought on the marijuana charges. The next day, he informed the prosecutor that he would supply the name and address of the drug supplier, but he would not testify at a trial. No other significant event occurred until the following October, when the defendant moved to dismiss the cocaine charge on the grounds of the speedy trial act. The government agreed to drop that charge and thereafter indicted the defendant on the marijuana offense.

The Court was not persuaded by the government's argument that the reason for the subsequent indictment on the marijuana charge was that the defendant had refused to cooperate. It noted that the extent to which the defendant would cooperate was made known to the government the previous January, shortly after the earlier indictment was brought. Accordingly, the Court found that the only reasonable explanation for the delayed filing of the indictment was the interposition of the defendant's speedy trial motion.

Unlike the present case, there was no ongoing investigation in *Groves* to account for the delay. In fact, the circumstances all pointed to the reasonable conclusion that no indictment for the marijuana offense would be forthcoming. Thus, a vindictive motive could reasonably be perceived in the particular facts. In contrast, defendant Griffin was given no reason whatsoever to expect

that the indictment in the present case would not be forthcoming, regardless of the ultimate disposition of the earlier instituted prosecution. The evidence is that the investigation into the alleged Veterans Administration fraud was initiated and pursued with the expectation that it would culminate in an indictment, and it was purely fortuitous that the actual indictment was not filed until after the defendant's various motions in *Griffin I.*

Therefore, we believe that the facts present no basis for the defendant's contention that the prosecutor acted vindictively, nor do they give such an appearance of vindictiveness that such a motive should fairly be inferred.

We hold that the trial court did not abuse its discretion in refusing to dismiss the indictment on vindictive prosecution grounds.

AFFIRMED.