**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**YELLOW FREIGHT SYSTEM, INC.,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**DUNCAN CERAMICS, INC., a corporation, Defendant–Appellant.**

**Nos. 79–1665, 79–1666.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 11, 1980.

Decided Oct. 17, 1980.

Rehearing Denied Feb. 20, 1981.
As Amended on Denial of Rehearing and Rehearing En Banc
February 20, 1981.

Trevor C. Clegg, Wild, Carter, Tipton, Quaschnick & Oliver, Dean A. Bailey, Stammer, McKnight, Barnum & Bailey, Fresno, Cal., argued, for defendant–appellant.

Michael L. Martin, Washington, D.C., argued, James E. White, Asst. U.S. Atty., Fresno, Cal., on brief, for plaintiff–appellee.

Before KILKENNY and FARRIS, Circuit Judges, and BELLONI,* District Judge.

FARRIS, Circuit Judge:

Yellow Freight System, Inc., and Duncan Ceramics, Inc., appeal the district court's denial of various pretrial motions to dismiss informations filed against them. Appellee United States moves to dismiss the appeals for lack of appellate jurisdiction. We dismiss in part and affirm in part.

---

* Honorable Robert C. Belloni, U. S. District Judge for the District of Oregon, sitting by designation.

1. The Act of October 17, 1978, Pub.L. No. 95–473, 92 Stat. 1337, recodified the substantive provisions involved in this case. Prior to this Act, the Elkins Act was codified at 49 U.S.C. §§ 41–43 (1976), but title 49 was not enacted as

On November 30, 1977, the United States served Yellow Freight and Duncan Ceramics with summonses and filed informations alleging that on fifty occasions Yellow Freight knowingly gave and Duncan Ceramics knowingly received rate concessions on interstate shipments of goods. The Elkins Act proscribes rate concessions and imposes a penalty of $1000 to $20,000 fine and up to two years' imprisonment in a penitentiary for granting or receiving rate concessions. 49 U.S.C. § 41(1), (3) (1976).[1]

On April 3, 1979, Yellow Freight and Duncan Ceramics filed a set of motions in the district court to dismiss the informations. In part these motions claim that the Elkins Act does not apply to motor carriers. In addition, however, this set of motions alleges that the informations are procedurally insufficient because (1) the crimes alleged are infamous and therefore must be prosecuted by grand jury indictment and (2) in any event the prosecution may not proceed without a preliminary determination of probable cause. The district court denied these motions.

I. *Appellate Jurisdiction*

Yellow Freight and Duncan Ceramics seek to base appellate jurisdiction on 28 U.S.C. § 1291 (1976), which grants appeals of right from "final decisions of the district courts." Specifically, they attempt to characterize the denial of their second set of motions as a "collateral order" appealable as a final decision under the rationale of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949).

As applied to criminal pretrial orders, this rationale confers appellate jurisdiction when:

1. The pretrial order fully disposed of the appellants' claim;

codified. The penal provisions of the Elkins Act now appear at 49 U.S.C. § 11903. Because the crimes charged allegedly took place before the 1978 Act, we use the 1976 codification in referring to the Elkins Act. The 1978 Act did not, however, purport to make any changes in substantive law. *See* Act of Oct. 17, 1978, Sec. 3(a), Pub.L. No. 95–473, 92 Stat. 1337, 1466.

2. The appellants' claim is collateral to, and separable from, the principal issue of guilt or innocence; and

3. The order involves an important right that would be lost if review had to await final judgment.

*See Abney v. United States*, 431 U.S. 651, 658–62, 97 S.Ct. 2034, 2039–41, 52 L.Ed.2d 651 (1977); *United States v. Griffin*, 617 F.2d 1342, 1344–46 (9th Cir. 1980). Inquiry into the immediate appealability of a particular pretrial order must focus upon each claim asserted. Thus immediate appealability of one of the defendants' claims will not confer pendent appellate jurisdiction over defendants' other claims. *Abney v. United States*, 431 U.S. 651, 662–63, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651 (1977).[2] Accordingly, the threshold issue of appellate jurisdiction must be addressed for each of the three claims asserted by the defendants, Yellow Freight and Duncan Ceramics.

### A. *Elkins Act Contention.*

■ Yellow Freight and Duncan Ceramics' claim that the particular provisions of the Elkins Act asserted in this case do not apply to motor carriers is not immediately appealable. The issue is "plainly not 'collateral' in any sense of that term." *Abney*, 431 U.S. at 663, 97 S.Ct. at 2042. It "may be reviewed effectively, and, if necessary, corrected if and when a final judgment results." *Id.* We accordingly grant the motion to dismiss the appeal as to the defendants' substantive claim.

### B. *Indictment Clause Contention.*

■ Yellow Freight and Duncan Ceramics contend that they have been charged with an infamous crime for which they may not, under the indictment clause of the Fifth Amendment, be "held to answer" except upon grand jury indictment. This claim meets all three of the standards for immediate appealability. Denial of defendants' motion completely and finally determined their claim in the trial court. Allowing the trial to progress so that facts may develop will not facilitate consideration of their claim. *Cf. United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) (no immediate appeal of denial of speedy trial claim under Sixth Amendment because determination of merits of claim depends on circumstances surrounding trial). Second, the entitlement of Yellow Freight and Duncan Ceramics to an indictment before prosecution is wholly collateral to and independent of the issue of their guilt on the underlying charges. Finally, the claim involves a right that would be irretrievably lost if the defendants were forced to stand trial before appeal. One purpose of the indictment clause is to shield defendants from unwarranted prosecutions for serious crimes. *Wood v. Georgia*, 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962); *Stirone v. United States*, 361 U.S. 212, 218 & n.3, 80 S.Ct. 270, 273 & n.3, 4 L.Ed.2d 252 (1960); *Gaither v. United States*, 413 F.2d 1061, 1066 (D.C. Cir. 1969); *United States v. Cox*, 342 F.2d 167, 170 (5th Cir.), *cert. denied*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965); *see also United States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974). Like the contentions held immediately appealable in *Abney* and *Griffin*, therefore, this claim "involves a right to be free from prosecution itself, rather than merely to be free from subsequent conviction." *Griffin*, 617 F.2d at 1345; *see Abney*, 431 U.S. at 660–62, 97 S.Ct. at 2040–41. We therefore deny the motion to dismiss with respect to this claim.[3]

---

**2.** Citing C. A. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3937, at 58 n.5 (Supp. 1980), Duncan Ceramics contends that *Abney* imposed no blanket prohibition of pendent appellate jurisdiction but merely held that pendent review was inappropriate in that case. Subsequent cases have not adopted so narrow a reading of *Abney*. *See, e.g., United States v. MacDonald*, 435 U.S. 850, 857 n.6, 98 S.Ct. 1547, 1551 n.6, 56 L.Ed.2d 18 (1978); *United States v. Klein*, 582 F.2d 186, 196 (2d Cir. 1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979); *United States v. Cerilli*, 558 F.2d 697, 699–700 (3d Cir.), *cert. denied*, 434 U.S. 966, 98 S.Ct. 507, 54 L.Ed.2d 452 (1977).

**3.** *In re Fendler*, 597 F.2d 1314 (9th Cir. 1979), does not require a different result. That case involved a denial of a petition to conduct a voir dire of grand jurors regarding possible bias. Such attacks on the procedure followed by a

## 1252

### C. Due Process Contention.

Finally, Yellow Freight and Duncan Ceramics contend that, even if they may be prosecuted by information, they are entitled to a preliminary hearing on the issue of probable cause. They assert that the trial itself will deprive them of protected liberty and property interests and argue that due process requires a hearing. This contention fulfills the first two elements of the *Abney* test. It has been fully disposed of by the trial court and is separable from the principal issue of guilt or innocence. At first blush, it also appears to meet the third element of the *Abney* test. If review must await final judgment, the defendants will have been subjected to a trial from which they assert they are constitutionally immune.

Since *Abney*, many appeals from pretrial orders have come before us. In these appeals defendants have demonstrated remarkable ability to frame almost any argument to meet the *Abney* test. Because the filing of an appeal allowable under *Abney* deprives the trial court of jurisdiction to proceed with trial, *Moroyoqui v. United States*, 570 F.2d 862, 864 (9th Cir. 1977), cert. denied, 435 U.S. 997, 98 S.Ct. 1651, 56 L.Ed.2d 86 (1978), defendants delay their trial when they pursue *Abney* appeals. So that defendants need not completely forego speedy trial to seek vindication of the rights protected by *Abney*, we must adopt procedures to dispose of these appeals as quickly as fair consideration permits.

■ We therefore hold that, in order to show that his or her claim involves an important right requiring immediate review, a defendant must first identify a valid principle of law that can apply to his or her case. *See United States v. Perkins*, 433 F.2d 1182, 1183, 1186 (D.C. Cir. 1970) (dismissing *Abney*–type appeal because issues posed were insubstantial). The defendant must then show that the principle confers an important right and that the right can only be preserved by immediate review. Failing such showings, an *Abney* appeal will not survive a motion for dismissal for lack of appellate jurisdiction.

■ Despite defendants' artful pleading, their final claim involves no important right that would be lost if we refuse immediate review. Although a defendant arrested or otherwise restrained has a Fourth Amendment right to a preliminary hearing on the issue of probable cause, absent restraint a prosecution may be maintained without any finding of probable cause. See *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), where after holding that an arrested defendant is entitled to a judicial determination of probable cause independent of the prosecutor's decision to file an information, id. at 117–18, 95 S.Ct. at 864–65, the Court continued:

> In holding that the prosecutor's assessment of probable cause is not sufficient alone to justify restraint of liberty pending trial, we do not imply that the accused is entitled to judicial oversight or review of the decision to prosecute. Instead, we adhere to the Court's prior holding that a judicial hearing is not prerequisite to prosecution by information. *Beck v. Washington*, 369 U.S. 541, 545, [82 S.Ct. 955, 957, 8 L.Ed.2d 98] (1962); *Lem Woon v. Oregon*, 229 U.S. 586, [33 S.Ct. 783, 57 L.Ed. 1340] (1913).

grand jury are ordinarily not immediately appealable. *United States v. Garner*, 632 F.2d 758, 765 (9th Cir. 1980). The present case, on the other hand, involves a claim that trial itself cannot proceed except according to a grand jury indictment. *See id.* (reserving question).

The issue of the immediate appealability of indictment clause claims was presented, but apparently not decided, in *Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979). A former congressman was charged by indictment with soliciting money from aliens in return for introduction of private bills in Congress. The indictment referred to legislative acts of the congressman. He claimed that trial according to the indictment would violate the speech or debate clause and that trial not according to the indictment would violate his indictment clause "right to be tried only on an indictment in precisely the form issued by a grand jury." *Id.* at 505, 99 S.Ct. at 2448. The Supreme Court, characterizing the claim as arising under the speech or debate clause, ruled that his claim was immediately appealable. *Id.* at 506–08, 99 S.Ct. at 2448–49. *Helstoski* does not squarely stand for the proposition that indictment clause claims are immediately appealable because the Court may have assumed that trial would proceed according to the indictment.

*Id.* at 118–19, 95 S.Ct. at 865.[4] Thus, defendants have identified no interest cognizable under the due process clause. Because defendants assert a claim based upon a legal theory foreclosed by the Supreme Court, their claim does not involve an "important right," 431 U.S. at 658, 97 S.Ct. at 1039, the third element of the *Abney* test is not met, and the district court's denial of this claim is not immediately appealable.[5]

## II. *Prosecution of Corporations by Information*

Yellow Freight and Duncan Ceramics contend that because they stand charged with offenses punishable by two years in a penitentiary, they may be prosecuted not by information, but only by grand jury indictment. The Fifth Amendment states that "[n]o person shall be held to answer for . . . [an] infamous crime, unless on . . . indictment of a Grand Jury." Relying on United States Supreme Court pronouncements that infamous crimes are those "punishable by imprisonment in a penitentiary," *e.g., Green v. United States,* 356 U.S. 165, 183, 78 S.Ct. 632, 642, 2 L.Ed.2d 672 (1958), defendants contend that they have been charged with infamous crimes and may not be prosecuted except on grand jury indictment.

In response, the United States notes that both defendants are corporations and therefore not amenable to imprisonment. It accordingly contends that this prosecution may proceed by information alone. *See United States v. Macklin,* 389 F.Supp. 272, 273 (E.D.N.Y.), *other holdings aff'd,* 523 F.2d 193 (2d Cir. 1975)

■■■ We agree with the United States that potential confinement in a penitentiary of some violators of a criminal statute does not render all violations of that statute "infamous." Congress may impose different punishments upon different classes of criminals. It has done so in the provisions of the Elkins Act here in question: the Act by its terms limits penitentiary confinement to individuals.[6] We do not, however, rest our holding upon this express recognition by Congress of practical limitations on punishment for corporate crime. Where, as in this case, a criminal statute makes violations punishable by imprisonment in a penitentiary, corporate violations of that statute are not automatically made infamous crimes by the possible infliction of such punishment on individuals.

Defendants argue that such a result completely deprives corporations of the right to grand jury protection. We disagree. The

---

**4.** *See also* 420 U.S. at 125 n.26, 95 S.Ct. at 869 n.26 ("Because the probable cause determination is not a constitutional prerequisite to the charging decision, it is required only for those suspects who suffer restraints on liberty *other than the condition that they appear for trial.*") (emphasis added); *United States v. Pickard,* 207 F.2d 472, 474–75 (9th Cir. 1953) (absent arrest, prosecution by information may proceed without oath or affirmation of probable cause); *Church v. United States,* 412 F.2d 836, 838 (9th Cir. 1969) (same). *But cf. United States v. Millican,* 600 F.2d 273, 276–77 (5th Cir. 1979) (holding that a summons is sufficient restraint to invoke probable cause requirement, where failure to appear on summons may result in issuance of warrant), *cert. denied,* 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980).

**5.** The rule we establish today may apply in other circumstances. For example, it might permit dismissal of *Abney* appeals founded on statutes not in force or on overruled cases. We find it unnecessary to define the contours of this rule, other than to state that defendants' indictment clause contention is appealable while their due process contention is not. As

future cases affect the merits of particular claims, of course, the immediate appealability of those claims may change.

We have recently adopted an internal procedure for expedited disposition of *Abney* appeals on their merits under 9th Cir. R. 6(h). *United States v. Miranda–Parra,* 637 F.2d 610, 612–613 (9th Cir. 1980); *see also Abney,* 431 U.S. at 662 n.8, 97 S.Ct. at 2042 n.8. Using this procedure, we disposed of the appeal in *Miranda–Parra* in less than five weeks. Although the 6(h) procedure seems generally preferable, our ruling today ensures that a motions panel of this court can dispose of frivolous *Abney* appeals even when 6(h) has not been invoked.

**6.** While the Elkins Act imposes a $1000 to $20,000 fine on "[e]very person or corporation" who knowingly gives or receives a concession, the provision imposing imprisonment applies only to "any person, or any officer or director of any corporation." 49 U.S.C. § 41(1) (1976). Thus, by its own terms the imprisonment provision of the Elkins Act does not apply to corporations.

possibility of imprisonment in a penitentiary is only one index of whether a crime is infamous.[7] Aside from tests of infamy that hinge on the possibility of punishment to which corporations are not amenable, the Supreme Court has occasionally suggested other incidents of infamy. For example, in *Ex parte Wilson*, 114 U.S. 417, 423–24, 5 S.Ct. 935, 938, 29 L.Ed. 89 (1885), the Court suggested that the Fifth Amendment may require indictment for "crimes infamous in their nature, independently of the punishment affixed to them."[8] In *Wilson* the Court also indicated that a congressional declaration of infamy might suffice. *Id.* at 426, 5 S.Ct. at 939; *see also United States v. Waddell*, 112 U.S. 76, 82, 5 S.Ct. 35, 38, 28 L.Ed. 673 (1884) (remanding to the circuit court to determine the "very serious question whether *this* crime is not made an infamous one by the language of the statute," which precluded violators from holding office; considered separately from punishment, the Court thought the language was "an indelible disgrace affixed to the party convicted"); *Ullmann v. United States*, 350 U.S. 422, 451 n.5, 76 S.Ct. 497, 513 n.5, 100 L.Ed. 511 (1956) (Douglas, J., dissenting). In addition, crimes punishable at common law by civil disabilities were deemed infamous. The indictment clauses of several state constitutions are interpreted to require indictment for such crimes, *e.g.*, *Elkin v. Commonwealth*, 269 Ky. 6, 8, 106 S.W.2d 83, 84 (1937), and at least one federal court has suggested that such crimes are infamous within the meaning of the Fifth Amendment, *Hunter v. United States*, 272 F. 235, 238 (4th Cir.), *cert. denied*, 257 U.S. 633, 42 S.Ct. 47, 66 L.Ed. 407 (1921).

Since we hold that imposition of potential imprisonment on individuals violating a criminal statute does not of itself make corporate violations of the same statute infamous crimes, the only remaining question is whether another factor renders the crimes charged in this case infamous. The crimes charged are not made infamous by the penalties attached to them, because those penalties are only fines. A fine, regardless of its amount, cannot be infamous punishment. *See United States v. Armored Transport, Inc.*, 629 F.2d 1313 at 1319 (9th Cir. 1980). Nor is this crime inherently infamous. The class of inherently infamous crimes, if it exists at all, would encompass only the most serious *mala in se*. Regulatory crimes, such as those charged in this case, are not inherently infamous.

■ The only perceptible basis for holding these crimes infamous would be that Congress has declared these crimes infamous by attaching the penalty of imprisonment in a penitentiary to similar crimes committed by individuals. The history of the statutes involved precludes such a basis. Congress enacted the Elkins Act in 1903. In place of the present provisions for penitentiary sentences, the original Act provided:

> In all convictions . . . for offenses under [various acts regulating interstate commerce] . . . no penalty shall be imposed on the convicted party other than the fine prescribed by law, imprisonment wherever now prescribed as part of the penalty being hereby abolished.

Elkins Act, ch. 708, § 1, 32 Stat. 847, 847 (1903). The present provision was added three years later by the Hepburn Act, ch. 3591, § 2, 34 Stat. 584, 588 (1906). Al-

---

7. The punishment attached to a crime is relevant to the determination of infamy because it indicates the character of the crime as perceived by Congress and the public. *See Mackin v. United States*, 117 U.S. 348, 351, 352–53, 354, 6 S.Ct. 777, 778, 779, 780, 29 L.Ed. 909 (1886) (in light of common perception, crimes punishable by confinement to a penitentiary are infamous); *Ex parte Wilson*, 114 U.S. 417, 427–28, 5 S.Ct. 935, 940, 29 L.Ed. 89 (1885) (for similar reason, crimes punishable by confinement at hard labor are infamous). In the case of crimes by individuals, the possibility of imprisonment for more than one year, and there-

fore in a penitentiary, remains the most reliable index of infamy. *See United States v. Driscoll*, 612 F.2d 1155, 1156 (9th Cir. 1980). It would be extremely rare for a crime by an individual that did not carry infamous punishment to be made infamous by some other factor.

8. *But see Weeks v. United States*, 216 F. 292, 298 (2d Cir.) (infamy depends solely on character of punishment), *cert. denied*, 235 U.S. 697, 35 S.Ct. 199, 59 L.Ed. 431 (1914); *Low v. United States*, 169 F. 86, 89 (6th Cir. 1909) (same; dictum).

though the Hepburn Act originated in the House, its restoration of the penalty of imprisonment was the result of a Senate amendment. The floor debate on the amendment indicates that the amendment was designed to enforce more effectively the ban on concessions, rather than to brand the giving of rebates with a special mark of infamy.[9] The violations charged here are not infamous crimes. We affirm the district court's denial of defendants' motion to dismiss.

In summary, we grant the motion to dismiss this appeal with respect to the defendants' Elkins Act and due process claims. With respect to the defendants' indictment clause claim, the motion to dismiss the appeal is denied; because the violations charged are not infamous crimes, however, we affirm the district court's rejection of that claim.

Dismissed in part and affirmed.

**9.** 40 Cong. Rec. 6620–28 (1906). There were actually three competing proposals on the Senate floor to reestablish the penalty of imprisonment. Throughout the floor debate, various speakers stressed the deterrent purpose of the penalty, thus negating any inference that Congress intended the penalty as an expression of the infamous character of the crime. *But see* 40 Cong. Rec. 6625 (statement of Sen. Daniel) (suggesting a retributive purpose). Any assertion that the amendment rendered granting of concessions an infamous crime is further undercut by the fact that all three proposals denominated the offense a misdemeanor.