UNITED STATES of America

v.

Michael LEARY.

Crim. No. 84–00011–02–B.

United States District Court,
D. Maine.

Sept. 23, 1988.

Joseph H. Groff, III, Asst. U.S. Atty., Portland, Me., for Gov't.

Mark E. Dunlap, Portland, Me., for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT

GENE CARTER, District Judge.

### I. INTRODUCTION

This matter comes before the Court on Defendant's motion to dismiss the Indict-

ment, filed on July 22, 1988. Defendant Michael Leary brings this motion pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure, as well as the Fifth and Sixth Amendments to the United States Constitution, to dismiss the Indictment with prejudice for unnecessary delay in bringing Defendant to trial. In accordance with the analysis that follows, this Court hereby denies this motion.

## II. STATEMENT OF FACTS

The Court finds the facts from the record made in these pretrial proceedings. On February 2, 1984, Defendant Michael Leary was indicted for criminal violations that allegedly occurred in the summers of 1980 and 1981. The Government, however, did not arrest Defendant until June 1, 1988. The delay between the Indictment and Defendant's arrest is the primary focus of this motion to dismiss.

The facts as alleged by the Government and undisputed by Defendant are as follows. In late August, 1983, the Government obtained indictments against twenty individuals, charging various federal violations concerning the smuggling of marijuana into the United States. Pursuant to a plea arrangement made subsequent to arrest under the indictments, several of the defendants identified Michael Leary as an individual whose identity had previously been unknown to the Government. Defendant was indicted on February 2, 1984 along with two others also identified by the cooperating defendants.

United States officials, however, did not in fact locate Defendant until June, 1988. The Government claims it lacked sufficient information to make successful use of the Drug Enforcement Administration computer (NADDIS), the National Crime Information Center (NCIC), or the Federal Bureau of Investigation (FBI) during this four-year, four-month period between indictment and arrest. The Government, meanwhile, has not disputed that during this period Defendant was living openly and notoriously with his family in Nassau County, Florida. Defendant was listed in the telephone directory and paid federal and state income taxes as well as local property taxes. He also incorporated a business. All these acts were done in his own name. Defendant also submitted voluntarily to two separate FBI checks in connection with his successful application for a maritime captain's license and an application to operate a local boy's summer camp.

Through a newspaper account mailed to him in 1984, Defendant learned of the first indictment issued against other individuals concerning the alleged violations. Although Defendant was not included in the list of those indicted, he consulted an attorney who advised him that no action was necessary and that he should contact a lawyer when and if he learned of formal charges brought against him. There is no indication that Defendant was aware of the Indictment issued against him on February 2, 1984. On May 13, 1988, Defendant was aboard a vessel stopped in waters off Florida. The record is unclear as to whether it was the Coast Guard or the Customs Service that conducted the routine stop, but Defendant was permitted to continue on his way after his operator's license was checked. Defendant was arrested nineteen days later, on June 1, 1988.

Defendant appears before this Court after having waived his right to an Identity Hearing in the United States District Court for the Middle District of Florida pursuant to Rule 40 of the Federal Rules of Criminal Procedure and having been released on Conditions of Release. Defendant now moves this Court to dismiss the indictment on grounds of unnecessary delay in bringing Defendant to trial in violation of the Rule 48(b) of the Federal Rules of Criminal Procedure as well as the Fifth and Sixth Amendments to the United States Constitution.

## III. ANALYSIS

### A. *Federal Rule of Criminal Procedure Rule 48(b)*

██ Most easily addressed is Defendant's motion to dismiss pursuant to Rule 48(b) of the Federal Rules of Criminal Pro-

cedure. Rule 48(b), a codification of the inherent power in all courts to dismiss for want of prosecution, *United States v. DeLeo*, 422 F.2d 487, 495 (1st Cir.), *cert. denied*, 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed. 2d 648 (1970), states:

> If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

Fed.R.Crim.P. 48(b). Defendant urges this Court to exercise its discretion and dismiss the Indictment for unnecessary delay between indictment in 1984 and arrest in 1988. What Defendant fails to address, however, is that Rule 48(b) is limited to post-arrest situations. *United States v. Marion*, 404 U.S. 307, 319, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). The fifty-one days between Defendant's arrest on June 1, 1988 and the filing of this motion on July 22, 1988 is insufficient delay to warrant a dismissal pursuant to Rule 48(b).

### B.  *Fifth Amendment Due Process*

[2] Defendant claims that delay by the Government constituted a violation of his right to due process of law under the Fifth Amendment. To prevail on this due process claim, Defendant bears a heavy burden of showing both that the delay caused him actual prejudice and that the Government intentionally delayed the indictment in order to gain a tactical advantage over Defendant. *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed. 2d 752 (1977); *United States v. Marler*, 756 F.2d 206, 213 (1st Cir.1985).

In his Memorandum of Law accompanying this Motion to Dismiss, Defendant acknowledges that he cannot establish actual prejudice but suggests that the entire delay from the alleged violation to his arrest, taken as a whole, has a cumulatively prejudicial effect. Absent a showing of actual prejudice, however, this Court must regard Defendant's suggestion of cumulative prejudice to be speculative and premature and therefore insufficient to support a due process claim. *United States v. Marion*, 404 U.S. at 325–26, 92 S.Ct. at 465–66. Furthermore, Defendant neither alleges any Government intent to delay the trial in order to gain a tactical advantage, nor alleges any facts that would suggest such an intent or tactical advantage. Absent allegations of both actual prejudice to Defendant and Government intent to delay, Defendant's Fifth Amendment due process claim must fail.

### C.  *Sixth Amendment Right to Speedy Trial*

■ Finally, Defendant claims that the delay between the indictment on February 2, 1984 and his arrest on June 1, 1988 constitutes a violation of his Sixth Amendment right to a speedy trial. This Court's analysis of the Sixth Amendment claim follows the United States Supreme Court's treatment in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which established a four-factor balancing test for determining if a defendant's right to a speedy trial is violated by delay. The four factors identified in *Barker v. Wingo* are the length of delay, the reason for the delay, the timing of defendant's assertion of the right, and any prejudice to the defendant. 407 U.S. at 530, 92 S.Ct. at 2192. These factors are all related and must be considered together, and the outcome in any given case varies greatly depending on facts peculiar to the situation. *Id.* at 533, 92 S.Ct. at 2193.

1. *Length of delay.* Inquiry into the length of the delay is a threshold matter in that unless there is some delay that is presumptively prejudicial, there is no need for further inquiry into the remaining factors. Whether a delay is long enough to trigger further inquiry depends upon facts peculiar to the individual case. *Id.* at 530–31, 92 S.Ct. at 2192–93. In the case at bar, Defendant was indicted on February 2, 1984 but was not arrested until June 1, 1988. This delay of four years and four months is clearly of sufficient length to merit further inquiry by the Court.

2. *Reason for the delay.* In defining the analysis that goes into this factor,

*Barker v. Wingo* distinguished among likely reasons for delay and discussed the appropriate weights to be accorded each such reason. A deliberate attempt to delay trial in order to hamper the defense should be weighed most heavily against the Government. 407 U.S. at 531, 92 S.Ct. at 2192. More neutral reasons, such as negligence or overcrowded courts, should be weighed less heavily, but are still considered against the Government as the bearer of ultimate responsibility for such circumstances. *Id.* Finally, valid reasons, such as unavailability to the Government of necessary witnesses, sufficiently justify delay so as not to be weighed against the Government. *Id.*

In the case at bar, as Defendant concedes, there is nothing to suggest that the Government attempted to delay the trial deliberately in order to gain a trial advantage. There are, however, ample suggestions of an overburdened federal system that would constitute a "neutral" factor to be considered against the Government. The record now before the Court justifies the conclusion that since his Indictment was issued in February 1984, Defendant has lived openly and notoriously with his family in Nassau County, Florida. In each year between his indictment and arrest, Defendant listed his name in the telephone directory, owned and payed taxes on property held in his own name, and filed state and federal income tax reports in his own name. During this period Defendant also submitted to, and cleared, a background check conducted by the FBI in 1985 in connection with his receiving a maritime vessel operator's license, and also cleared an FBI check ordered by the Florida Department of Health and Rehabilitative Services in 1987 in connection with an application to operate a boy's summer camp.

These facts suggest that despite Defendant's living openly and notoriously in one location for the entire four-year, four-month delay, the Government, for reasons peculiar to it, was unable to locate the Defendant in order to arrest him. The Government, under the Sixth Amendment, has a constitutional duty to make a diligent, good faith effort to locate and apprehend a defendant and bring that defendant to trial. *United States v. Deleon,* 710 F.2d 1218, 1221 (7th Cir.1983). Regardless of however slothful the Government's efforts to find this individual may have been, there is nothing to suggest a deliberate attempt to delay that would weigh heavily against the Government. The Government concedes that it has limited resources to expend in coordinating its fugitive searches. Such limitations constitute a neutral factor that is within the Government's control and is therefore weighed against its position.

3. *Defendant's assertion of the right.* In order to argue that he has been denied his right to a speedy trial, Defendant must show that he demanded this right in a timely fashion. While a failure to demand the right to a speedy trial does not automatically constitute a waiver, under the *Barker v. Wingo* analysis it would be difficult for a defendant who has not asserted his right to a speedy trial to prove that he was denied this right. 407 U.S. at 531–32, 92 S.Ct. at 2192–93. Accordingly, a defendant who waits too long after indictment to claim his right to a speedy trial risks losing his Sixth Amendment claim under *Barker v. Wingo.*

In the case at bar, however, it is uncontested that Defendant remained unaware of his indictment until his arrest in June, 1988. A defendant who is unaware that he is under indictment cannot be held to have waived his right to a speedy trial. *Fouts v. United States,* 253 F.2d 215, 218 (6th Cir.1958). Defendant's failure to assert his right to a speedy trial before his arrest does not weaken his Sixth Amendment claim. *United States v. Jenkins,* 701 F.2d 850, 857 (10th Cir.1983). The Government argues that Defendant should have consulted public records, ascertained whether he was under indictment before his arrest, and then claimed his Sixth Amendment rights. This Court rejects the notion that the Sixth Amendment required Defendant to take the initiative and contact authorities in order to preserve his constitutional rights. Defendant was under no obligation to complete an investigation for which federal authorities bore responsibility and had left half undone.

4. *Prejudice to Defendant.* Whether or not a defendant has suffered prejudice as a result of pretrial delay must be determined in light of the interests that the speedy trial right seeks to protect. In *Barker v. Wingo,* the Supreme Court identified three such interests: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. 407 U.S. at 532, 92 S.Ct. at 2193. Neither (1) nor (2) are factors in the instant case. Defendant was not incarcerated during the period of delay. The fact that he was unaware of the Indictment against him until his arrest meant that Defendant experienced little if any anxiety or concern which could be attributed properly to conduct of the Government. However, the extent to which the defense was impaired is of pivotal concern to the Court in evaluating prejudice to the Defendant.

In order to show prejudice to his defense, Defendant must specify how his defense was impaired. Defendant claims that the long delay impairs his defense, both by itself and by diminishing both his and his witnesses' memories. The passage of time alone, without a significant deprivation of liberty or impairment of the ability to defend, is not conclusive evidence of prejudice. *United States v. Columbo,* 852 F.2d 19, 25–26 (1st Cir.1988). Vague assertions of impaired memory will not suffice. *United States v. Edwards,* 577 F.2d 883, 889 (5th Cir.), *cert. denied,* 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978). Here, Defendant claims that time has diminished his memory and those of other witnesses, but he fails to specify the forgotten facts and how this will impair his defense to the charges here made against him. Furthermore, it is difficult to see how Defendant can satisfy this requirement of specificity before evidence at trial reveals damaging memory lapses. As the United States Supreme Court has noted, "most speedy trial claims ... are best considered only after the relevant facts have been developed at trial.... Before trial, of course, an estimate of the degree to which delay has impaired an adequate defense tends to be speculative." *United States v. MacDonald,* 435 U.S. 850, 858, 98 S.Ct. 1547, 1551, 56 L.Ed.2d 18 (1978). Accordingly, unless and until Defendant can provide these specific facts, the Court finds no prejudice to Defendant's case.

As stated above, the factors in *Barker v. Wingo* are all related and must be considered together, and the outcome in any given case will vary depending on the particular facts. 407 U.S. at 533, 92 S.Ct. at 2194. On balance, and considering all the factors together, this Court finds on the present record no violation of Defendant's Sixth Amendment right to a speedy trial. Defendant was never incarcerated, suffered no anxiety or concern as a result of indictment until arrested, and cannot specify any harm to his defense caused by the delay. Although other factors are weighted against the Government, the absence of any indication of prejudice to Defendant defeats the Sixth Amendment claim.

Accordingly, it is ORDERED that Defendant's motion to dismiss the Indictment be, and it is hereby, DENIED.