8 F.3d 32
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee
v.
John Paul JOHNSON, Defendant-Appellant
 No. 92-30278.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 5, 1993.
Decided Sept. 29, 1993.
 
 1
 Before: PREGERSON and KLEINFELD, Circuit Judges, and LEGGE, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Appellant John Paul Johnson was convicted of possession of a firearm by an ex-felon, in violation of 18 U.S.C. § 922(g)(1). He appeals the district court's decision not to suppress the evidence of a gun found during a protective sweep of his home. Appellant argues that 1) the protective sweep was not justified; 2) the firearm was not found in plain view; and 3) the protective sweep was the tainted fruit of a previous unlawful search.
 
 
 4
 We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 I.
 
 5
 Appellant and co-defendant David Mattila were indicted on July 25, 1990 for violations of federal firearms laws. The indictment was based on weapons seized during a September 13, 1989 search. An arrest warrant was issued pursuant to the July 25, 1990 indictment, and appellant was arrested at his home on August 9, 1990. While arresting appellant, the police conducted a protective sweep of his home and discovered an additional firearm. A superseding indictment was returned, charging appellant with possession of that firearm while a convicted felon.
 
 
 6
 The district court held an evidentiary hearing on appellant's and Mattila's joint motion to suppress the evidence found during the September 13, 1989 search, and appellant's motion to suppress the evidence found during the August 9, 1990 search. The district court denied both motions, but no contemporaneous opinion or findings of fact appear in the record.
 
 
 7
 Co-defendant Mattila proceeded to trial first and was found guilty of possession of a firearm by an ex-felon and possession of a firearm in relation to drug trafficking. Later, a jury acquitted appellant of all charges stemming from the firearms discovered during the September 13, 1989 search, but found him guilty because of his possession of the firearm found during the August 9, 1990 search.
 
 
 8
 Mattila appealed, challenging the legality of the September 13, 1989 search. This court found that the search violated the Fourth Amendment, because the officers lacked probable cause. United States v. Mattila, CA No. 91-30168 (9th Cir. March 20, 1992). Mattila was not retried because the only evidence against him was that found during the search.
 
 
 9
 Appellant Johnson filed a separate appeal, challenging both the September 13, 1989 and the August 9, 1990 searches. This court held that the legality of the September 13, 1989 search was irrelevant to appellant Johnson, because he had been acquitted of the charges stemming from that search. United States v. Johnson, CA 91-30053 (April 9, 1992). This court also vacated the district court's denial of the motion to suppress the firearm found during the August 9, 1990 search, and remanded the case to the district court to "make the essential factual findings on the record." On June 29, 1992 the district court made its findings of fact, and again denied appellant's motion to suppress. This appeal follows.
 
 
 10
 We are therefore concerned here only with appellant Johnson's challenge to the August 9, 1990 search, but some of the relevant facts date back to 1989.
 
 II.
 
 11
 The September 13, 1989 search was conducted by police officers Major, Berry and Nederhiser at a house which was not appellant's home, but where he and Mattila were present. The officers discovered a loaded Beretta semiautomatic weapon concealed in Mr. Mattila's right back pocket. They also found three other firearms, drug paraphernalia, and controlled substances in the house.
 
 
 12
 Pursuant to the indictment resulting from the September 13, 1989 search, an arrest warrant for appellant was issued. No warrant was issued for a search of appellant's residence. Portland police officers Berry and Nederhiser, along with Alcohol, Tobacco and Firearms agents, executed the arrest warrant on August 9, 1990 at appellant's residence. Agent Meadows first drove by the house to see if Johnson was there. He informed the other officers that Johnson was present, and that there were other men, women, and children in and around the residence. Officers and agents then met to plan the arrest, and decided that the police officers would remain outside while the ATF agents went into the house to make the arrest.
 
 
 13
 Appellant Johnson was arrested on his front porch. As he was being arrested, other agents entered his house. Agent Comery entered the living room and Agent Packard entered the bedroom, where he found the gun at issue in this appeal.
 
 
 14
 Agent Comery testified at the suppression hearing that he was familiar with the circumstances of the 1989 search, and knew that firearms and drugs had been found in that house. He also knew that appellant was an ex-felon and associated with Mattila.
 
 
 15
 When asked why appellant's residence had been entered on August 9 and the people inside "secured," Comery replied:
 
 
 16
 Numerous people had been seen at the residence. We were not sure who they were. We knew that guns had been present previously. I was not sure where Johnson was, whether he was outside or inside. And the other thing was we also had an arrest warrant for Mattila.
 
 
 17
 Agent Packard did not testify at the suppression hearing due to an injury, but he did testify at trial. Packard testified that he found the gun in plain view on the headboard of the bed in the first floor master bedroom. At the suppression hearing, Agent Comery testified that Packard showed him the gun in plain view, but that he was not present when Packard found the gun, so he could not definitely say that it was in plain view when Packard found it. Ms. Fleming, appellant's friend, testified at the suppression hearing that the gun had been under some hats, and was not in plain view.
 
 III.
 
 18
 We review the legality of a warrantless search de novo. United States v. Hoyos, 892 F.2d 1387, 1396 (9th Cir.1989), cert. denied, 498 U.S. 825 (1990). The district court's findings of fact will be upheld unless they are clearly erroneous. Id.
 
 
 19
 The search of a home without a warrant is presumptively unreasonable, and hence unlawful under the Fourth Amendment to the United States Constitution. However, limited searches may be reasonable in exigent circumstances--for example, to protect the safety of officers. See, e.g., Terry v. Ohio, 392 U.S. 1 (1968) ("frisks" for weapons); Michigan v. Long, 463 U.S. 1032 (1983) (roadside encounters).
 
 
 20
 The United States Supreme Court has recently decided that a protective sweep, what it described as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others," is a reasonable search under the Fourth Amendment. Maryland v. Buie, 494 U.S. 325, 327 (1990). A protective sweep is lawful if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Buie, 494 U.S. at 334.
 
 
 21
 Officers have the right to enter and look for a person in his home if they have an arrest warrant and probable cause to believe that he is there. Buie, 494 U.S. at 333. Once the suspect has been arrested, however, police normally may not enter other rooms of the house because the suspect still has an expectation of privacy in the unsearched areas of his home. Id. However, police officers have an interest "in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack." Id. Thus, officers may make a "cursory inspection of those spaces where a person may be found" if they have a reasonable suspicion, based on articulable facts, that there might be other individuals in the house who pose a danger to the officers or to others. Buie, 494 U.S. at 335.
 
 IV.
 
 22
 Appellant contends that there were not sufficient articulable facts to warrant a belief by the officers that others in the house might pose a danger to them. Appellant emphasizes that he was arrested outside on the porch, that there were women and children present, and that he did not resist officers during the September 1989 search. Appellant also complains that, prior to arresting him on the porch, agents had already formulated a "plan" to "secure" the residence.
 
 
 23
 The district court found that "The agents had articulable facts justifying a belief that the bedroom might harbor a dangerous person" because 1) they knew that there were other adults present; 2) they did not know if appellant's co-defendant, Mr. Mattila, was present; and 3) they knew that defendant had been arrested a year previously in a house where firearms and narcotics had been found.
 
 
 24
 In United States v. Hoyos, 892 F.2d 1387 (9th Cir.1989) we found a protective sweep justified even though defendant had been arrested outside his house, because officers knew that over one hundred kilos of cocaine had been seized that day, knew that at least five other suspects were not yet in custody, and saw people running into the house to escape the police. We reasoned that "[a] bullet fired at an arresting officer standing outside a window is as deadly as one that is projected from one room to another," and found that facts known to the officers at the time reasonably suggested that theymight be in danger from individuals within the house. Hoyos, 892 F.2d at 1397.
 
 
 25
 The Supreme Court's decision in Buie indicates that the mere presence of other adults during an in-home arrest is insufficient to justify a protective sweep. There must be articulable facts suggesting that dangerous individuals may be present.[1] In Buie the Supreme Court specifically rejected the government's contention that "the danger that inheres in the in-home arrest for a violent crime" is sufficient by itself to justify a protective sweep. Buie, 494 U.S. at 334, n. 2. Rather, the Court held that, like Terry stops, protective sweeps must be based on "reasonable, individualized suspicion" of danger to the officers. Id.
 
 
 26
 We affirm the district court's determination that a protective sweep was justified under the facts of this case. The officers knew that appellant had previously been arrested in a house containing firearms and narcotics. They knew that he had been with Mattila at the prior arrest, and that Mattila had carried a concealed Beretta Automatic. There were other adults present in the house whom the officers could not identify. Thus, they had sufficient reason to believe that some of those individuals might be armed and dangerous.
 
 
 27
 There is no evidence to suggest that the arrest was a pretext to search the house. The mere fact that the officers and agents planned a method for the arrest does not suggest otherwise. At the time the agents formulated their plan, they did not know where in the house appellant was located, or what dangers they might experience from the other individuals whom they knew were present. There is no suggestion in the record that the agents were looking for or expected to find evidence of another crime when they executed the warrant. They planned to sweep the house to find appellant and to protect themselves.
 
 V.
 
 28
 Appellant next contends that the agents exceeded the permissible scope of the protective sweep, because the gun found by Agent Packard in the bedroom was not in "plain view." We review the district court's factual determination under the clearly erroneous standard. Hoyos, 892 F.2d at 1396.
 
 
 29
 Because a protective sweep is for the limited purpose of protecting the arresting officers, it is "not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." Buie, 494 U.S. at 335. Therefore officers may only seize evidence found in plain view while conducting this cursory inspection.
 
 
 30
 Appellant contends that the district court's determination that the gun was in plain view was clearly erroneous, because Agent Packard, who found the gun, did not testify at the suppression hearing. Appellant's friend Ms. Fleming stated at the hearing that the gun was under some hats. Packard did testify at the trial. In determining whether a district court has erred in denying a motion to suppress, this court need not confine itself to the evidence at the suppression hearing, but may consider the evidence offered at trial. Rocha v. United States, 387 F.2d 1019, 1021 (9th Cir.1967), cert. denied, 390 U.S. 1004 (1968); United States v. Ardle, 435 U.S. 861 (9th Cir.1970), cert. denied, 402 U.S. 947 (1971).
 
 
 31
 The district court here expressly chose to believe the testimony of Agent Packard. He stated:
 
 
 32
 ... Packard testified at trial that as soon as he entered the bedroom, he saw the handgun on the headboard directly in front of him. A loaded magazine was beside the gun.
 
 
 33
 Linda Fleming, defendant's girlfriend, testified at the suppression hearing that the gun was under "a couple of hats. Sitting on boxes under a couple of hats." Tr. at 99.
 
 
 34
 ....
 
 
 35
 There is conflicting evidence on whether the handgun was in plain view. I accept Packard's testimony that he saw the handgun on defendant's headboard as soon as he entered the room. Because the handgun was in plain view, the seizure was valid.
 
 
 36
 That factual finding is not clearly erroneous and must be affirmed.
 
 VI.
 
 37
 Appellant also claims that the search incident to his arrest was the "tainted fruit" of the earlier, unlawful search conducted in September 1989. However, this argument was considered and rejected by a previous panel of this court. This court earlier stated:
 
 
 38
 We reject Johnson's argument that the legality of the 1989 search is relevant to the legality of the 1990 search of Johnson's residence incident to his arrest. An indictment is not invalid because the grand jury that issued the indictment considered evidence obtained in violation of the Fourth Amendment. See United States v. Calandra, 414 U.S. 338 (1974) (exclusionary rule does not apply to grand jury proceedings). Since the indictment was valid, and the arrest warrant was based on the indictment, the arrest was valid.
 
 
 39
 United States v. Johnson, No. 91-30053, slip. op. at 3 (9th Cir. Apr. 9, 1992). Because this issue has already been considered and decided, we may not revisit it here. United States v. Maybusher, 735 F.2d 366, 370 (9th Cir.1984), cert. denied, 469 U.S. 1110 (1985).
 
 
 40
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Charles A. Legge, United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Thus, our statement in Hoyos at page 1396 that "officers who have affected an arrest at a residence may conduct a limited search for persons who may destroy evidence or pose a threat to the officers' safety, if the officers can point to articulable facts that support their belief that others may be on the premises," may be too broad under the later-announced standard in Buie
 But we need not decide today whether Buie overruled our previous decisions allowing protective sweeps to prevent the destruction of evidence or because "other people" may be on the premises.