In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00205-CR
______________________________


 THE STATE OF TEXAS, Appellant
 
V.
 
COREY DEWAYNE FISHER, Appellee


                                              

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 33,391-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            After being confined for nearly ten months in the Gregg County Jail on several felony
charges, without having been indicted by a grand jury, Corey Dewayne Fisher filed a motion to
dismiss the charges against him for want of a speedy trial. Those charges stemmed from Fisher's
November 10, 2004,


 arrest for possession of more than four grams of cocaine


 with intent to
deliver,


 possession of more than four grams but less than 200 grams of cocaine,


 and possession of
a firearm by a felon.


 Fisher submitted his dismissal motions to the 188th Judicial District Court
August 26, 2005.


 That same day, the trial court scheduled a hearing on the motions for September
7, 2005. 
            On September 1, 2005, a grand jury for the 124th Judicial District Court indicted Fisher in
these cases. However, because the speedy trial motions had already been submitted and docketed
in the 188th Judicial District Court, the presiding judge of the 124th Judicial District Court
transferred these newly-indicted cases to the 188th Judicial District Court September 7, 2005.


 After
a short hearing September 7, 2005, the presiding judge of the 188th Judicial District Court granted
Fisher's motions to dismiss all felony charges stemming from his November 10, 2004, arrest.


 The
State has now timely sought review of those dismissals.


 
            On appeal, the State contends the trial court improperly weighed the factors required by
Barker v. Wingo


 in reaching its conclusion that Fisher's right to a speedy trial had been violated. 
1. Procedural Consideration
            The traditional method for presenting a speedy trial claim before an indictment is returned
is through the filing of a pretrial application for writ of habeas corpus. See, e.g., Ex parte Martin,
6 S.W.3d 524, 524–25 (Tex. Crim. App. 1999). However, our law expressly disavows any
requirement that an accused employ any special form or nomenclature for presenting such a claim. 
See Tex. Code Crim. Proc. Ann. art. 11.03 (Vernon 2005). Nor does our law require a
preindictment application be filed in a particular district court of the county of jurisdiction. See Tex.
Code Crim. Proc. Ann. art. 11.05 (Vernon 2005). Though the parties have not expressly identified
this case as an appeal of a trial court's ruling on a pretrial application for writ of habeas corpus, such
is plainly the substance of this appeal (given the tenor of the arguments advanced in both the trial
court and this Court) and we shall, therefore, treat this appeal as a habeas matter.
            A defendant is not entitled to habeas corpus relief if he or she has an adequate remedy at law. 
Smith v. Gohmert, 962 S.W.2d 590, 593 (Tex. Crim. App. 1998). This rule has been applied to
preclude the consideration of a defendant's pretrial application for writ of habeas corpus concerning
the constitutional right to a speedy trial. The rationale for the application of this rule is that a
defendant has an adequate remedy at law—the right to file a motion to set aside the indictment
pursuant to Article 27.03 of the Texas Code of Criminal Procedure. See Tex. Code Crim. Proc.
Ann. art. 27.03 (Vernon 1989). If the trial court erroneously denies the motion, the defendant may
appeal any conviction resulting from the continued prosecution. Smith, 962 S.W.2d at 592 (citing
Pope v. Ferguson, 445 S.W.2d 950, 955–56 (Tex. 1969)). The foundation of this rule is from United
States v. MacDonald, 435 U.S. 850, 860–61 (1978) ("If . . . an accused [is deprived] of his right to
a speedy trial, that loss, by definition, occurs before trial. Proceeding with the trial does not cause
or compound the deprivation already suffered."). However, the Court in MacDonald recognized
that, when the trial court dismisses the charges based on the speedy trial issue, the State has the
statutory right to appeal. Id. at 857 (recognizing that United States v. Marion, 404 U.S. 307, 310–12
(1971) authorized such an appeal). 
            In this case, when Fisher filed his motion, he could not ask for the dismissal of the
indictment, as none was pending. Nevertheless, an indictment was filed and was pending at the time
of the hearing. Accordingly, when the trial court granted the motion and dismissed the charges, the
State could properly invoke its statutory right of appeal as the dismissal order constituted a final,
dispositive, and appealable order. Accord MacDonald, 734 U.S. at 857, 861.
2. Applicable Law and the Appellate Standard of Review on Appeal
            "The Sixth Amendment to the United States Constitution guarantees the accused's right to
a speedy trial." Zamorano v. State, 84 S.W.3d 643, 647 n.5 (Tex. Crim. App. 2002) (citing Barker,
407 U.S. at 515; Dickey v. Florida, 398 U.S. 30, 37 (1970); Smith v. Hooey, 393 U.S. 374, 377–78
(1969); Klopfer v. N. Carolina, 386 U.S. 213, 223 (1967)). "In addition, Article I, § 10 of the Texas
Constitution guarantees the accused in all criminal prosecutions the right to a speedy and public
trial." Zamorano, 84 S.W.3d at 647 & n.6 (further referencing Tex. Code Crim. Proc. Ann. art.
1.05 (Vernon 2005) ("[i]n all criminal trials the accused shall have a speedy public trial by an
impartial jury.").


 When a defendant makes a claim that he or she has been denied the right to a
speedy trial, the court reviewing that claim must use the four-part test from Barker: the court must
consider, under the totality of the circumstances, "the length of the delay, the State's reason for delay,
whether the delay was due to lack of diligence on the part of the State, and whether the delay caused
harm to the accused." Ex parte Martin, 33 S.W.3d 843, 845 (Tex. App.—Austin 2000), pet. dism'd,
improvidently granted, 46 S.W.3d 932 (Tex. Crim. App. 2001); see also Shaw v. State, 117 S.W.3d
883, 888–89 (Tex. Crim. App. 2003). These four "Barker factors" are then assigned varying weights
by the court according to the individual facts of the case, placed on the appropriate sides of the
proverbial scales of justice, and weighed with and against each other to determine if, on balance, the
accused's right to a speedy trial has been violated. See, e.g., Holmes v. State, 938 S.W.2d 488,
489–91 (Tex. App.—Texarkana 1996, no pet.). In the case now before us, the State contends the
trial court erred in weighing the Barker factors. We give deference to the trial court in evaluating
factual issues and drawing inferences from the facts. Kelly v. State, 163 S.W.3d 722, 726–27 (Tex.
Crim. App. 2005). However, legal questions are reviewed de novo. Johnson v. State, 954 S.W.2d
770, 771 (Tex. Crim. App. 1997). The balancing test as a whole is purely a legal question. Id. 
3. The Barker Factors and the Evidence Concerning Each
            We now turn to our analysis of the Barker factors, mindful that "'[n]o one factor possesses
talismanic qualities . . . .'" Zamorano, 84 S.W.3d at 648 (quoting Barker, 407 U.S. at 533).
            A. The Length of the Delay
            First, the length of the delay is to be considered. Barker, 407 U.S. at 530; Zamorano, 84
S.W.3d at 648–49. "Until there is some delay which is presumptively prejudicial, there is no
necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530.


 The
period of delay "is measured from the time the defendant is arrested or formally accused." Shaw,
117 S.W.3d at 889 (citing Marion, 404 U.S. at 313). Generally, a speedy trial claim will not be
considered until a sufficient amount of time has elapsed so as to present a prima facie case that the
State's continued delay is unreasonable. Shaw, 117 S.W.3d at 889 (citing Doggett, 505 U.S. at
651–52; Barker, 407 U.S. at 530). Once the defendant makes a prima facie showing, however, the
reviewing court must consider this length of delay as one factor among the remaining factors in
evaluating the accused's claim. Shaw, 117 S.W.3d at 889 (citing Doggett, 505 U.S. at 652).
            Fisher remained in jail for almost ten months from the time of his arrest on these felony
charges until the State secured an indictment. On appeal, the State properly concedes this lapse of
time is sufficient to establish a prima facie showing of an unreasonable delay. Cf. State v. Owens,
778 S.W.2d 135, 136–38 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd) (seven-month delay
established prima facie showing). We, therefore, must determine what weight, if any, should be
assigned to this first Barker factor and then proceed to the remaining factors. Barker, 407 U.S. at
530; Zamorano, 84 S.W.3d at 648–49.
            Ten months is certainly a long time to wait for the State to make any effort to secure an
indictment—especially in what appears to be a "run-of-the-mill" narcotics case.


 However, when
considering the length of delay only, ten months is not nearly as long as many cases that, after
analyzing all the factors, have found no violation of the speedy trial requirement. See, e.g., Dragoo
v. State, 96 S.W.3d 308 (Tex. Crim. App. 2003) (three and one-half years); State v. Munoz, 991
S.W.2d 818 (Tex. Crim. App. 1999) (seventeen months); Shaw, 117 S.W.3d 883 (thirty-eight
months); Kelly, 163 S.W.3d 722 (seventeen months). We do not believe this ten-month period is
such a long time that it should be accorded more than a slight weight against the State. 
            B. The State's Proffered Reason
            Second, we must consider the reason or reasons the government assigns to justify the delay. 
Barker, 407 U.S. at 531; Zamorano, 84 S.W.3d at 648, 649–50. Sometimes the government's
justification(s) under this second prong should be given greater or lesser weight, depending on the
merit of the reason(s). Barker, 407 U.S. at 531. "A deliberate attempt to delay the trial in order to
hamper the defense should be weighed heavily against the government." Id. (referencing Marion,
404 U.S. at 325; see Pollard v. United States, 352 U.S. 354, 361 (1957)). A "neutral" justification,
such as an overcrowded docket or mere negligence, "should be weighed less heavily but nevertheless
should be considered since the ultimate responsibility for such circumstances must rest with the
government rather than with the defendant." Barker, 407 U.S. at 531. "Finally, a valid reason, such
as a missing witness, would serve to justify appropriate delay." Id.
            Here, the State blamed the delay in seeking an indictment for this narcotics charge on a
backlog at the Texas Department of Public Safety's Tyler crime laboratory. The State argued before
the trial court (as it does on appeal) that it could not "file an indictment . . . when [it did] not know
the true nature of the substance to be alleged in that indictment." This would appear to be a
meritorious justification for delay, especially when (as was the case here) there is no evidence in the
record that the arresting officers had conducted any "field tests" that might otherwise give them a
preliminary confirmation as to the identity of the suspected controlled substance. See, e.g., Young
v. State, 183 S.W.3d 699, 704 (Tex. App.—Tyler 2005, pet. ref'd). Nevertheless, there are several
problems with this proffered excuse. 
            First, the State submitted the drugs to the laboratory for testing December 30, 2004. Thus,
it appears the initial nearly two-month delay was directly attributable to the State's failure to submit
the drugs for analysis, not to the crime laboratory. Second, as both this State's Third Court of
Appeals and the United States Supreme Court have noted, the State's "unreasonable delay" in a run-of-the-mill criminal case cannot be justified merely by suggesting that the State has a backlog of
cases or a shortage of staff. Barker, 407 U.S. at 538 (White, J., concurring); Martin, 33 S.W.3d at
846–47. "The government must bear responsibility for failing to provide adequate resources to law-enforcement agencies." Martin, 33 S.W.3d at 847. Third, the State's own laboratory report indicated
the testing was finished by June 9, 2005—a date nearly three months before the State finally sought
or obtained an indictment. Thus, it would seem that nearly an additional three months of delay could
not serve to excuse the State's delay in seeking an indictment from the grand jury. Finally, there is
evidence in the record that the State does not always wait for the results of laboratory testing in drug
cases. Fisher faced two other misdemeanor charges (one for possession of marihuana,


 the other
for possession of a dangerous drug


) stemming from the same November 10, 2004, arrest. Both
charges were filed in Gregg County's County Court at Law Number 1 in 2004, apparently without
the need for first receiving any confirmation from the Tyler crime laboratory about the identity of
the alleged dangerous drug or the alleged weight of the marihuana. 
            Accordingly, we cannot conclude the State's proffered reason for delay—a backlog in the
Tyler crime laboratory—entirely justifies the nearly ten-month delay in seeking and obtaining an
indictment for the narcotics charges. Yet, in the realm of speedy trial jurisprudence, ten months is
on the low end of the scale of violations, and it is only slightly longer than the time required to
establish a prima facie case. We, therefore, believe this second Barker factor weighs only slightly
against the State's case involving the narcotics charges.
            C. Fisher's Efforts to Assert His Speedy Trial Right
            Next, the reviewing court should consider the timeliness of the defendant's assertion of his
or her right to a speedy trial. Barker, 407 U.S. at 529, 531–32; Zamorano, 84 S.W.3d at 648,
651–52. This prong of the analysis permits the reviewing court 
to attach a different weight to a situation in which the defendant knowingly fails to
object from a situation in which his attorney acquiesces in long delay without
adequately informing his client, or from a situation in which no counsel is appointed. 
It would also allow a court to weigh the frequency and force of the objections as
opposed to attaching significant weight to a purely pro forma objection.
 
Barker, 407 U.S. at 529. 
            Fisher did not assert his right to a speedy trial until August 26, 2005. This was after he had
spent over nine months in jail. The record before us also reveals Fisher made no other efforts to
obtain a pretrial release while the State awaited the laboratory results. Fisher did not request an
examining trial. See Tex. Code Crim. Proc. Ann. art. 16.01 (Vernon 2005). He did not file a
motion seeking a reduction in bond or release on personal recognizance after the State failed to
secure an indictment within ninety days of his arrest. See Tex. Code Crim. Proc. Ann. art. 17.151
(Vernon Supp. 2005). And there is no evidence he had attempted to resolve the charges with the
State without the necessity of an indictment. See Tex. Code Crim. Proc. Ann. art. 21.20 (Vernon
1989) (State may charge by way of filing information); Chapple v. State, 521 S.W.2d 280, 282 (Tex.
Crim. App. 1975) (defendant may waive right to be tried on indictment). 
            Fisher argued in the trial court, as he now does on appeal, that he has no obligation to ask for
an examining trial, a bond reduction, or other relief. While there is some logic to such argument in
the context of the usual trial process (where, for example, the State has the burden of proof in a jury
trial and our law places no affirmative duty on defendants to request examining trials or bond
reductions in every case), Fisher's argument regarding this third factor is inconsistent with the
express requirements of Barker itself. Stated differently, this third Barker factor requires the
reviewing court to look for affirmative evidence that the accused asserted his or her right to a speedy
trial with persistence and timeliness; it makes no requirement that the reviewing court look toward
the State's conduct in evaluating this prong of Barker. Accordingly, to the degree Fisher now
attempts (as he did in the trial court) to shift the focus of our analysis under this third Barker factor
away from his actions (or lack thereof) and toward the State's conduct, Fisher is mistaken. See
Barker, 407 U.S. at 529, 531–32; Zamorano, 84 S.W.3d at 651–52.
            The record shows that Fisher made no effort to assert his right to a speedy trial—or otherwise
press the State for movement regarding his felony charges—for almost ten months. We agree with
the State that this factor should weigh against Fisher. Given that the near-ten-month delay is only
slightly past the threshold for making a prima facie showing to trigger the Barker inquiry, we
conclude this third factor to be only of a slight weight—against Fisher's claim of being denied a
speedy trial.



            D. Evidence of Prejudice to Fisher Caused by the Delay
            Fourth, the trial court should determine whether there is evidence of prejudice to the accused
attributable to the State's delay. Barker, 407 U.S. at 531–32; Zamorano, 84 S.W.3d at 648, 652–54. 
This factor is often the most elusive and difficult to quantify. "Prejudice . . . should be assessed in
the light of the interests of defendants which the speedy trial right was designed to protect." Barker,
407 U.S. at 532. There are three such interests: "(i) to prevent oppressive pretrial incarceration; (ii)
to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will
be impaired." Id. Of these three interests, the last is the most important "because the inability of a
defendant adequately to prepare his [or her] case skews the fairness of the entire system." Id. 
            No consideration need be given to the second subfactor as there was no evidence presented
at the hearing on the motion to dismiss and nothing was presented showing Fisher's anxiety or
concern. 
            Clearly, the most cogent argument of prejudice is that of pretrial incarceration. Fisher was
incarcerated for more than nine months before filing the motion to dismiss. Therefore, he suffered
a form of prejudice that a speedy trial was designed to protect. In weighing the degree of prejudice,
we must also consider that other avenues were available to Fisher to ameliorate this type of
prejudice—specifically Article 32.01 of the Texas Code of Criminal Procedure. Article 32.01
authorizes the release of a defendant on or before the last day of the next term of court after the 180th
day of confinement, when no indictment or information is filed. Tex. Code Crim. Proc. Ann. art.
32.01 (Vernon Supp. 2005). "By enacting Article 32.01, the legislature created a right in the accused
to be free from the 'incidental punitive effect' of incarceration or being held to bail if the State is
unable to obtain an indictment within a specified period of time." State v. Condran, 951 S.W.2d
178, 189 (Tex. App.—Dallas 1997), pet. dism'd, 977 S.W.2d 144 (Tex. Crim. App. 1998). Fisher
never attempted to invoke Article 32.01. The statements presented to the trial court at the hearing
indicate Fisher was represented by counsel since "early on." That remedy, while not affording Fisher
a dismissal with prejudice (as does a finding of a speedy trial violation), would have provided a
method to avoid some of the pretrial incarceration. Other cases, involving lengthier pretrial
incarceration than is present here, have held on the facts of each case that there was no speedy trial
violation. In Munoz, the defendant had been incarcerated for seventeen months and the explanation
for the delay was due to crowded dockets and plea negotiations. Munoz, 991 S.W.2d at 822. The
speedy trial motion was filed after fifteen months of the seventeen-month delay. There was no
showing of impairment of the defense. The Texas Court of Criminal Appeals found it "easy" to
determine that, under those facts, there was no speedy trial violation. In Meyer v. State, 27 S.W.3d
644 (Tex. App.—Waco 2000, pet. ref'd), the defendant had been in jail for twenty-three months; no
valid reason was given for the delay; the speedy trial motion was properly asserted; and the court of
appeals found only minimal prejudice from the incarceration and denied the speedy trial claim. 
            On appeal, the entire substance of Fisher's argument with respect to this fourth factor reads
as follows:
The State concedes that a delay of over eight months from arrest to trial is
presumptively prejudicial. . . . Without an indictment the Appellee has no notice of
what he may have to defend against. . . . Here, the Appellee suffered a
presumptively prejudicial delay, even as measured from arrest to trial, without even
the benefit of notice that would allow him to prepare a defense - as the state
constitution gives him the right to have.
 
            First, we disagree with Fisher's understanding of the State's concession on appeal. In its
appellate brief, the State, citing Harris, 827 S.W.2d at 956, acknowledged "that a delay of more than
eight months is sufficient to require an inquiry into all of the balancing tests." We do not interpret
this acknowledgment by the State as a concession that prejudice is presumed by this period of delay. 
            Second, Fisher's brief otherwise offers no citation to the record and cites no authority for the
proposition that a ten-month delay could ever be sufficient to presume prejudice. Nor has our
research uncovered any caselaw stating a ten-month delay is, without any additional consideration
or evidence, sufficient to allow a presumption of prejudice.


 In Barker, the United States Supreme
Court found there was minimal evidence the accused suffered any prejudice as a result of Kentucky's
five-year delay in prosecuting him, even though he was incarcerated for ten months during the delay.
Of course, Barker was prejudiced to some extent by living for over four years under
a cloud of suspicion and anxiety. Moreover, although he was released on bond for
most of the period, he did spend 10 months in jail before trial. But there is no claim
that any of Barker's witnesses died or otherwise became unavailable owing to the
delay. The trial transcript indicates only two very minor lapses of memory -- one on
the part of a prosecution witness -- which were in no way significant to the outcome.
 
407 U.S. at 534. 
            Finally, we review the record for any evidence that Fisher's defense of the case has been
impaired—the most important consideration of the three prongs of the prejudice factor because it
could affect the merits of the case and "skews the fairness of the entire system." See id. at 532. 
Fisher presented no evidence that the defense of his case has been in any way prejudiced by the ten-month delay. We have independently reviewed the record in this case, and we see no evidence that
Fisher's ability to defend himself against the State's impending charges was prejudiced at all by the
State's delay in this case. There was no evidence, circumstantial or direct, that any witnesses for
Fisher had died or suffered memory loss. There is no suggestion anywhere in the record that
exculpatory evidence has been lost or destroyed due to any delay. Nor is there any suggestion in the
record that the delay might have increased the likelihood of Fisher receiving a more severe
punishment should he be found guilty. This prong, therefore, weighs moderately against Fisher.
4. Weighing of the Barker Factors
            Finally, the reviewing court must consider the four Barker factors in the aggregate, along
with any other relevant circumstances as may be known by the reviewing court. Barker, 407 U.S.
at 533; Zamorano, 84 S.W.3d at 648, 654–55. To do this, the court should first evaluate the strength
of each of the four Barker factors and then balance the respective strengths of those factors against
the relative weights of the remaining factors "in light of the conduct of both the prosecution and the
defendant." Zamorano, 84 S.W.3d at 648; see also Barker, 407 U.S. at 530.
            As previously stated, the length of the delay—nearly ten months—weighs slightly against
the State and in Fisher's favor. The State's proffered explanation—a crime laboratory backlog—does
not justify the entire delay. We, therefore, conclude the second Barker factor slightly favors Fisher's
claim on these drug charges. But Fisher's failure to make any tangible efforts to assert his speedy
trial right (other than the single motion, which was granted by the trial court) or to avail himself of
other remedies weighs slightly against Fisher's claim. Finally, in weighing the overall prejudice
factor, we note that the most important subpart is whether Fisher's case has been impaired, and there
is no evidence of such impairment. Likewise, there is no prejudice shown in anxiety or concern of
Fisher. So, two of the interests that the speedy trial right is intended to protect have not been
affected, including the most important interest (impairment of defense). We further must weigh
Fisher's pretrial incarceration against his failure to assert other remedies that could have alleviated
a portion of the incarceration. Overall, in considering the relative weights of all three subfactors of
prejudice, we do not find that it rises to a level favoring Fisher's claim of a violation of the speedy
trial right. 
            After considering the relative weights of these competing Barker factors, along with the other
relevant circumstances apparent from the record before us, we conclude the balance of the Barker
factors weighs against Fisher's claim of a speedy trial violation. We, therefore, reverse the judgment
of the trial court and remand this case for further proceedings in accordance with this opinion. 

 
                                                                        Jack Carter
                                                                        Justice

Date submitted:          May 18, 2006
Date decided:              June 20, 2006

Publish